[No. H035137. Sixth Dist. Nov. 3, 2010.]

JARED FLINT JACKSON, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Lawrence A. Gibbs; Swanson & McNamara and Edward W. Swanson for Petitioner.

No appearance for Respondent.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Laurence K. Sullivan, Amy Haddix and Sharon Wooden, Deputy Attorneys General, for Real Party in Interest.

**OPINION**

**BAMATTRE-MANOUKIAN, Acting P. J.—**

## INTRODUCTION

Petitioner Jared Flint Jackson was sentenced in March 2004 to two consecutive terms of 15 years to life following his conviction after a jury trial of two counts of aggravated sexual assault on a child (Pen. Code, § 269)[1] and one count of misdemeanor child endangerment (§ 273a, subd. (b)). After this court filed its decision in *People v. Uribe* (2008) 162 Cal.App.4th 1457 [76 Cal.Rptr.3d 829] (*Uribe*), petitioner filed a petition for writ of habeas corpus in this court, arguing that the prosecution's failure to disclose during pretrial discovery the videotape of the victim's sexual assault response team (SART) examination amounted to prejudicial *Brady* error[2] and a denial of due process, and requesting that this court order a new trial. On February 5, 2009, we issued an order to show cause returnable in the superior court why petitioner was not entitled to the relief requested. On October 27, 2009, after completion of the briefing and without holding an evidentiary hearing, the superior court issued an order granting the petition for writ of habeas corpus without specifying what relief petitioner would receive.

On or about November 6, 2009, the People filed a motion for reconsideration of the October 27, 2009 order, arguing that additional facts had come to light after the People had filed their return. On December 18, 2009, the superior court filed its order granting the motion for reconsideration, vacating its order of October 27, 2009, and inviting petitioner to supplement his habeas corpus petition. On January 5, 2010, petitioner filed a petition for writ of mandate and/or prohibition in this court seeking vacation of the order granting the motion for reconsideration. We summarily denied the petition on January 25, 2010.

Petitioner filed a petition for review in the Supreme Court. After requesting and receiving an answer to the petition and a reply, on March 30, 2010, the Supreme Court granted the petition for review and transferred the matter back to this court with directions to vacate our January 25, 2010 order, and to issue an order directing the superior court to show cause why the relief sought in the petition should not be granted. We issued the order to show cause on April 16, 2010.

We find that the superior court has inherent power to reconsider and vacate an order granting a petition for writ of habeas corpus within the 60-day time

---

[1] All further unspecified statutory references are to the Penal Code.

[2] *Brady v. Maryland* (1963) 373 U.S. 83 [10 L.Ed.2d 215, 83 S.Ct. 1194].

period for the People to file an appeal from the order, as long as no appeal has yet been filed. We further find that, on the facts of this case, the superior court acted within its discretion in granting reconsideration of its order granting the petition for writ of habeas corpus. Accordingly, we will deny the petition for writ of mandate and/or prohibition.

## FACTS AND PROCEDURAL HISTORY

In March 2003, S., petitioner's 13-year-old stepdaughter, disclosed to her therapist and to an investigator for the district attorney's office, Carl Lewis, that petitioner had sexually molested her about 10 months earlier. S. told Lewis that petitioner gave her a glass of Kool-Aid and told her to drink all of it. An hour after she drank it, she began to feel dizzy. She fell asleep on the couch in the living room, and awoke to find petitioner standing next to her. He hit her on the side of her head. S. fell back to sleep and, when she awoke again, petitioner was lying on top of her. One of his hands was on her shoulder, the other was inside her vagina. She fell back to sleep. When she next awoke, petitioner was removing her pants. At some point he grabbed her breasts. He again lay on top of her with one hand on her shoulder and the other hand on her vagina. She could not get up because petitioner was too heavy and she was afraid of him.[3] Petitioner then put his penis in her vagina. After some time, S. fell back to sleep again. When she awoke the next morning, petitioner was not with her. She went to the bathroom, and it hurt for her to urinate. Later that day, petitioner told her in an "angry" voice: " 'Don't tell or you'll know what will happen.' "

S. was examined in April 2003 by Mary Ritter, a SART examiner. Ritter testified at petitioner's trial that her examination of S. disclosed "hymenal findings which were suggestive of prior penetrating trauma." She conceded that these findings could have been the result of developmental or congenital conditions or some other injury, and that she could not definitely identify the source of these findings.

A jury convicted petitioner of two counts of aggravated sexual assault on a child (§ 269) and one count of misdemeanor child endangerment (§ 273a, subd. (b)). The trial court sentenced him to two consecutive terms of 15 years to life in March 2004. He appealed his conviction to this court. We found no prejudicial errors and affirmed the judgment in a nonpublished opinion. (*People v. Jackson* (Sept. 2, 2005, H027259).) At the same time, we summarily denied a petition for writ of habeas corpus in which petitioner had argued that he had been convicted based on false evidence—the testimony of

---

[3] S. testified at petitioner's trial that petitioner had hit her more than 10 times in the past few years and had once intentionally burned her with a hot cigarette lighter.

Ritter—and that his trial counsel had been ineffective for failing to obtain an independent medical opinion regarding the validity of Ritter's medical opinion. (*In re Jackson* (Feb. 5, 2009, H033483).) In support of the petition, petitioner had submitted a declaration from Dr. James E. Crawford, medical director of the Center for Child Protection at Children's Hospital and Research Center in Oakland. In the declaration, Dr. Crawford stated that, in his opinion, the interpretation of the physical findings identified by Ritter during the examination of S. "would be what is referred to as 'non-specific.' " "To say that this examination is 'suggestive of prior penetrating trauma,' in my opinion, is to draw a conclusion that the observed physical phenomena simply does not support."

Subsequently, in *Uribe, supra*, 162 Cal.App.4th at page 1463, this court held that the nondisclosure by the prosecution of the videotape of the SART exam of a child who claimed she had been sexually assaulted by her grandfather constituted prejudicial *Brady* error. In that case, Ritter conducted a SART exam on the child, but apparently did not tell prosecutors that she had videotaped the exam. The prosecution disclosed still photographs of the exam, which were introduced into evidence, and Ritter testified at trial that the photographs revealed physical evidence " 'consistent with a penetrating event occurring.' " (*Id.* at p. 1466.) It was not until after the trial that defense counsel learned of the existence of the videotape, which tended to impeach Ritter's testimony. (*Id.* at pp. 1469–1470.) Because this court found that Ritter was part of the " 'prosecution team' " for *Brady* purposes, it found that her knowledge of the existence of the SART videotape was imputed to the prosecution (*id.* at p. 1481), and that the failure of the prosecution to disclose the videotape undermined confidence in the outcome of the trial (*id.* at p. 1482).

Following the publication of *Uribe*, petitioner's appellate counsel contacted the district attorney's office to find out whether there was a videotape of S.'s SART exam. In a June 2008 response letter to counsel, the supervising attorney of the district attorney's sexual assault unit replied: "We had no indication in our records that such a tape existed, so I inquired of Ms. Ritter. She informed me that she did have a video of the exam and agreed to send it [to] me. Based on my brief review of this case and my discussion with DDA James Gibbons-Shapiro, I do not believe this tape constituted *Brady* material. Never-the-less, had we known of its existence at the time we would have provided it to trial counsel for the defendant. As a result it is being provided to you at this time." Counsel provided a copy of the videotape to Dr. Crawford, along with the photographs Ritter had relied on in her trial testimony. Counsel asked Dr. Crawford whether the videotape affected his opinion regarding what S.'s SART exam revealed and whether it would have been important to see the videotape in addition to the photographs before rendering a medical opinion during the trial.

On October 6, 2008, Dr. Crawford signed a declaration stating that the videotape "contains a very significant amount of additional information and detail than was available to a medical examiner who consulted only the photographs." Based on his review of the videotape, Dr. Crawford concluded "that the examination findings do not suggest prior penetrating trauma." Rather, the findings were " 'unremarkable,' " that is, they would give "absolutely no insight as to whether the allegations of prior penetrating trauma are true or not." Therefore, Dr. Crawford also concluded that "having the videotape would have been extremely important to any forensic practitioner attempting to interpret the results of this medical examination."

On October 17, 2008, counsel filed a petition for writ of habeas corpus on petitioner's behalf in this court, arguing that the prosecution's failure to disclose the videotape during pretrial discovery amounted to prejudicial *Brady* error and a denial of due process. Counsel requested that this court order a new trial. After requesting and receiving an informal response from the People, as well as a reply from petitioner, on February 5, 2009, we issued an order to show cause returnable in the superior court why petitioner was not entitled to the relief requested.

The People filed the return in the superior court in May 2009, contending that petitioner failed to establish either that any alleged *Brady* violation undermined confidence in the outcome of petitioner's trial, or that the testimony of Ritter was false. The People argued that Dr. Crawford's findings in 2005, prior to reviewing the videotape, and in 2008, after reviewing the videotape "are strikingly similar," which "undermines the reliability of Petitioner's claim . . . ." In his July 2009 denial, petitioner contended that there was no question that the prosecution failed to disclose the videotape or that the videotape was favorable to the defense within the meaning of *Brady*. In support of his contention, petitioner submitted a declaration from Dr. Joyce Adams, professor of clinical pediatrics at the University of California, San Diego, stating that the evidence in petitioner's case is not suggestive of prior penetrating trauma. Petitioner argued, however, that an evidentiary hearing might be necessary "to determine if the testimony of Drs. Crawford and Adams regarding the significance of the videotape is credible."

On October 27, 2009, without holding an evidentiary hearing, the superior court issued a six-page order stating, in relevant part, "In light of the central role that Ms. Ritter's testimony played in Petitioner's conviction, this Court's confidence in the outcome of Petitioner's trial is undermined in light of Doctor Crawford's description of the exculpatory nature of the videotape. As such the petition for writ of habeas corpus is GRANTED." The court did not specify what relief petitioner would receive.

On or about November 6, 2009, the People filed a "motion for reconsideration of October 27, 2009 order granting petition for writ of *habeas corpus*." The motion was based on the pleadings, exhibits, and transcripts of the proceedings before the trial court in the *Uribe* case following remand from this court in that matter. During those proceedings, it was discovered in July 2009 that the public defender's office knew as early as March 13, 2001, that videotapes of SART exams existed and should be specifically requested during pretrial discovery. The motion contended that "[h]ad the People known about the Public Defender's knowledge of the existence of the videotapes dating back to 2001 at the time the return was filed, the People would have argued that the tape in this case was not, in fact, suppressed, and declarations would have been submitted at that time to substantiate that argument. Instead, such information did not become available to the People until after the completion and filing of the return. As a result, this information was not available for this Court's consideration prior to the October 27 order." "In light of the newly discovered evidence, the People respectfully request that this Court vacate its October 27 order and enter a new order denying the petition based on a new finding that the evidence was not suppressed by the prosecution, thus no *Brady* violation occurred." Alternatively, the People requested that the superior court vacate its order granting the petition and order an evidentiary hearing to resolve disputed issues of fact.

Footnote 2 of the People's motion stated in relevant part: "The Court has inherent authority to re-examine a ruling based upon unusual or changed circumstances. The California Supreme Court has often recognized the 'inherent powers of the court . . . to insure the orderly administration of justice.' . . . Code of Civil Procedure § 1008 provides guidance and authority. . . . It is not clear that CCP § 1008 applies to a criminal case or in a quasi-civil habeas proceeding such as this. Inherent authority of the Courts pursuant to the Constitution is enough. . . . In many instances, the criminal courts have looked to CCP § 1008 for guidance. . . ."

Petitioner filed opposition to the motion for reconsideration on or about November 24, 2009. Petitioner first contended that the court lacked jurisdiction to reconsider its order: "This Court's entry of its Order granting the petition for writ of habeas corpus was a final adjudication of the claims of the parties, and hence functioned as a judgment." "While Code of Civil Procedure section 1008 provides the Court with jurisdiction to reconsider interim orders, the cases are clear that the Court lacks jurisdiction to reconsider a judgment like the one it issued in [petitioner's] case." "With the issuance of that Order, the Court no longer had jurisdiction to reconsider its judgment, and [the People's] only remedy is by way of appeal."

Petitioner also contended that the People knew of the " 'new fact' " prior to the filing of the court's order and, "if the People had complied with their

obligation to bring this 'new' fact to the Court's attention prior to its entry of judgment, the result would still have been the same. . . . Petitioner would then have amended his Petition to allege that his counsel was ineffective for failing to seek the evidence which the People had hidden. Because the test for ineffective assistance of counsel is the same as the test for a *Brady* violation (i.e., whether the error undermines confidence in the outcome), the Court would have reached the same conclusion regardless of whether the error was the fault of the prosecution (as in a *Brady* claim), or trial counsel (as in an ineffectiveness claim)."

Lastly, petitioner contended that, even if the court had jurisdiction to reconsider its order, and even if the motion for reconsideration was not barred by a failure to base it on "new facts," "the motion must still be denied because it is completely untenable as a matter of substantive, constitutional law." Petitioner argued that, because trial counsel had requested disclosure of any and all exculpatory evidence and all relevant real evidence obtained as a part of the investigation of the charged offenses, the prosecutor had the duty to disclose the videotape even if trial counsel could have sought and found the videotape on his own. (See *Banks v. Dretke* (2004) 540 U.S. 668, 695 [157 L.Ed.2d 1166, 124 S.Ct. 1256] [defendants need not "scavenge for hints of undisclosed *Brady* material when the prosecution represents that all such material has been disclosed"].)

On December 18, 2009, the superior court filed its order granting the motion for reconsideration, stating: "This Court's order of October 27, 2009 is VACATED. Petitioner is invited to supplement his petition for writ of habeas corpus with a claim of ineffective assistance of trial counsel."

On January 5, 2010, petitioner filed a petition for writ of mandate and/or prohibition in this court, contending that the superior court acted in excess of its jurisdiction and abused its discretion by granting the motion for reconsideration, and seeking vacation of that order. We summarily denied the petition on January 25, 2010, without requesting preliminary opposition. Petitioner filed a petition for review in the Supreme Court, stating that the issue presented was: "Upon entry of a final order granting habeas relief, does the superior court retain jurisdiction to reconsider its decision under Code of Civil Procedure section 1008?" After requesting and receiving an answer to the petition and a reply, on March 30, 2010, our Supreme Court granted the petition for review and transferred the matter back to this court "with directions to vacate [our] order dated January 25, 2010 summarily denying the petition for writ of mandate and/or prohibition, and to issue an order directing respondent superior court to show cause why the relief sought in the petition should not be granted." We issued the order to show cause on April 16, 2010. The People filed the return on May 25, 2010, and petitioner filed a reply on July 6, 2010.

## CONTENTIONS

As he did below, petitioner contends in his petition for writ of mandate and/or prohibition that (1) "grant of habeas relief constitutes a final judgment, and entry of judgment divests the court of jurisdiction to entertain a motion for reconsideration"; and (2) "the People failed to present new evidence in support of the motion for reconsideration and provided no satisfactory explanation for the failure to timely bring to [the court's] attention the facts alleged as grounds for reconsideration." "For this separate reason, [the court] had no jurisdiction to consider the motion for reconsideration."

In the return, the People contend that the superior court had jurisdiction to vacate its order granting the petition for writ of habeas corpus, and that the court did not abuse its discretion by doing so. "Even if petitioner was correct that the superior court's order granting habeas relief was a final judgment not subject to *reconsideration*, it does not follow that the superior court lacked jurisdiction to *vacate* that judgment. On the contrary, several statutes authorized postjudgment motions that effectively vacate the judgment." "It is immaterial that the motion was labeled a motion for reconsideration, rather than a motion for new trial." "A contrary conclusion would leave the People with no effective remedy where, as here, newly discovered evidence calls into question the petitioner's entitlement to habeas relief."

In his reply, petitioner contends that, as the People never requested that the superior court treat their motion as one for new trial, the People may not do so now. Petitioner further contends that the purportedly "new" evidence did not prove that the People had not violated *Brady*.

## DISCUSSION

### Writ of Habeas Corpus

■ "The writ of habeas corpus enjoys an extremely important place in the history of this state and this nation." (*People v. Villa* (2009) 45 Cal.4th 1063, 1068 [90 Cal.Rptr.3d 344, 202 P.3d 427] (*Villa*).) "A writ of '[h]abeas corpus may . . . provide an avenue of relief to those unjustly incarcerated when the normal method of relief—i.e., direct appeal—is inadequate' [citation], and the Great Writ has been justifiably lauded as ' "the safe-guard and the palladium of our liberties" ' [citations]." (*In re Sanders* (1999) 21 Cal.4th 697, 703–704 [87 Cal.Rptr.2d 899, 981 P.2d 1038]; see *In re Clark* (1993) 5 Cal.4th 750, 764 [21 Cal.Rptr.2d 509, 855 P.2d 729] (*Clark*).) "The writ has been available to secure release from unlawful restraint since the founding of [this] state. [Citations.]" (*Clark, supra,* at p. 764.) In this state, availability of the writ of habeas corpus is implemented by section 1473, subdivision (a),

which provides: "Every person unlawfully imprisoned or restrained of his liberty, under any pretense whatever, may prosecute a writ of habeas corpus, to inquire into the cause of such imprisonment or restraint." (See *Villa, supra,* 45 Cal.4th at p. 1068.)

"The Legislature has labeled [a habeas corpus proceeding] a 'Special Proceeding[] of a Criminal Nature' [citation], but the label is not dispositive. [Citations.] It is not itself a criminal case, and it cannot result in added punishment for the petitioner. Rather, it is an independent action the defendant in the earlier criminal case institutes to challenge the results of that case. [Citation.]" (*In re Scott* (2003) 29 Cal.4th 783, 815 [129 Cal.Rptr.2d 605, 61 P.3d 402].) In *Scott,* our Supreme Court held that a habeas corpus proceeding is civil in nature for purposes of deciding how the petitioner may assert the privilege against self-incrimination. (*Ibid.*) However, the court stated that it "need not, and [did] not, decide whether a habeas corpus proceeding is civil or criminal for other purposes. [Citation.] It is a special proceeding and not entirely analogous to either category. [Citation.]" (*Id.* at p. 816, fn. 6; but see *In re Barnett* (2003) 31 Cal.4th 466, 478, fn. 10 [3 Cal.Rptr.3d 108, 73 P.3d 1106] ["habeas corpus proceedings like the one before us are properly viewed as civil actions designed to overturn presumptively valid criminal judgments and not as part of the criminal process itself"].)

■ Procedures for habeas corpus proceedings are set forth in part 2 of the Penal Code, at sections 1473 to 1508. "The provisions of Part 2 (commencing with Section 681) shall apply to all criminal actions and proceedings in all courts, except where . . . special provision is made for particular courts or proceedings." (§ 690.) Additional procedures for habeas corpus proceedings in the superior court are set forth in California Rules of Court, rule 4.551,[4] including a timetable for the court's ruling on a petition filed in that court, and are also discussed in appellate court decisions. (See, e.g., *Board of Prison Terms v. Superior Court* (2005) 130 Cal.App.4th 1212, 1233–1235 [31 Cal.Rptr.3d 70] (*Board of Prison Terms*); *People v. Duvall* (1995) 9 Cal.4th 464, 474–477 [37 Cal.Rptr.2d 259, 886 P.2d 1252]; *People v. Romero* (1994) 8 Cal.4th 728, 737–738 [35 Cal.Rptr.2d 270, 883 P.2d 388] (*Romero*).) "Our Supreme Court has emphasized that the goal of 'the procedures that govern habeas corpus is to provide a framework in which a court can discover the truth and do justice in [a] timely fashion.' (*People v. Duvall, supra,* 9 Cal.4th at p. 482.)" (*Board of Prison Terms, supra,* 130 Cal.App.4th at pp. 1239–1240.)

In *Board of Prison Terms,* we noted that "the well-established rules of habeas corpus procedure provide the superior court with the means of

---

[4] All further rule references are to the California Rules of Court.

ensuring that the pleadings create a framework in which a court can discover the truth and do justice in a timely fashion. For example, where there are 'technical irregularities' in the pleadings in a habeas corpus proceeding, a court issuing an order to show cause has the discretion to grant leave to amend. [Citation.] Similarly, where the superior court determines that the habeas corpus petition has pleading defects and believes that correction of the defects is necessary to ensure a full and fair hearing and a determination of the cause, the superior court has the discretion to give notice of the defect and grant leave to amend or supplement the petition. [Citation.] [¶] If the superior court grants leave to amend or supplement the petition and the petitioner files a supplemental petition that adds new claims not raised in the original habeas corpus petition, the trial court then may determine which of the claims states a prima facie case for habeas corpus relief and issue an appropriate order to show cause. The respondent must respond to the order to show cause by filing a return that addresses the prima facie claims, to which the petitioner may reply in a traverse. The issues are then properly joined in accordance with the well-established rules governing habeas corpus procedure." (*Board of Prison Terms, supra*, 130 Cal.App.4th at pp. 1239–1240.)

■ "An 'order on writ of habeas corpus' is the court's order granting or denying the relief sought by the petitioner." (Rule 4.550(b)(6).) No appeal lies from an order denying a petition for writ of habeas corpus. (*Clark, supra*, 5 Cal.4th at p. 767, fn. 7; *People v. Gallardo* (2000) 77 Cal.App.4th 971, 983 [92 Cal.Rptr.2d 161] (*Gallardo*).) However, the People may file an appeal from an order granting a petition for writ of habeas corpus even if the order does not discharge a prisoner from custody. (§§ 1506, 1238, subd. (a)(5); *People v. Superior Court (Gregory)* (2005) 129 Cal.App.4th 324, 330 [28 Cal.Rptr.3d 276].) Therefore, an order granting a petition for writ of habeas corpus is an appealable order analogous to a final judgment. (See, e.g., §§ 1506, 1235, subd. (b); *Gregory, supra*, 129 Cal.App.4th at pp. 329–331; *In re Crow* (1971) 4 Cal.3d 613, 622 [94 Cal.Rptr. 254, 483 P.2d 1206].)

If desiring to do so, the People must file a notice of appeal from an order granting a petition for writ of habeas corpus "within 60 days after the rendition of the judgment or the making of the order . . . ." (Rule 8.308(a).) "[I]f an appeal is not taken an order [granting a petition for writ of habeas corpus] becomes final when the time for appeal has passed (*In re Crow*[, *supra*,] 4 Cal.3d 613, 621–622 . . .) . . . ." (*People v. Huff* (1975) 46 Cal.App.3d 361, 365 [120 Cal.Rptr. 210].) When the order becomes final, its ruling is binding. (*In re Crow, supra*, 4 Cal.3d at pp. 621–623.)[5] "A final order or judgment granting relief to a petitioner on habeas corpus is a

---

[5] An order denying a petition for writ of habeas corpus in the superior court is final immediately upon its filing, and review of the order can only be had by the filing of a new petition in the Court of Appeal. (*Clark, supra*, 5 Cal.4th at p. 767, fn. 7.)

conclusive determination that he [or she] is illegally held in custody; it is res judicata of all issues of law and fact necessarily involved in that result. [Citations.]" (*Crow*, at p. 623.)

None of these authorities directly addresses whether the superior court may reconsider an order granting a petition for writ of habeas corpus before the time to appeal has passed and the order becomes final and binding. The parties indicated at oral argument that they have not been able to find, and we have not found, any authorities directly on point.

*Reconsideration in Special Proceedings of a Criminal Nature*

■ "In criminal cases there are few limits on a court's power to reconsider interim rulings. [Citations.]" (*People v. Castello* (1998) 65 Cal.App.4th 1242, 1246 [77 Cal.Rptr.2d 314] (*Castello*).) "The California Supreme Court has often recognized the 'inherent powers of the court . . . to insure the orderly administration of justice.' [Citations.]" (*Id.* at p. 1247.) "A court's inherent powers are wide. [Citations.] They include authority to rehear or reconsider rulings: '[T]he power to grant rehearings is inherent,—is an essential ingredient of jurisdiction, and ends only with the loss of jurisdiction.' [Citations.]" (*Id.* at p. 1248.) "A court could not operate successfully under the requirement of infallibility in its interim rulings. Miscarriage of justice results where a court is unable to correct its own perceived legal errors, particularly in criminal cases where life, liberty, and public protection are at stake. Such a rule would be ' ". . . a serious impediment to a fair and speedy disposition of causes . . . ." [Citations.]' [Citation.]" (*Id.* at p. 1249.)

■ "The general rule is that ' " '[t]he filing of a valid notice of appeal vests jurisdiction of the cause in the appellate court until determination of the appeal *and issuance of the remittitur*' [citation], thereby divesting the trial court of jurisdiction over anything affecting the judgment. [Citations.]" ' [Citations.] ' "The purpose of the rule depriving the trial court of jurisdiction in a case during a pending appeal is to protect the appellate court's jurisdiction by preserving the status quo until the appeal is decided. The rule prevents the trial court from rendering an appeal futile by altering the appealed judgment . . . by conducting other proceedings that may affect it." [Citation.]' [Citation.]" (*Gregory, supra*, 129 Cal.App.4th at p. 329.) "[T]his rule applies where habeas corpus proceedings are concerned [citation] . . . ." (*Ibid.*) Thus, a timely filed notice of appeal by the People from an order granting habeas corpus relief by the superior court divests the superior court of jurisdiction over anything affecting the judgment until determination of the appeal and issuance of the remittitur. (*Ibid.*) "Even under the general rule, however, jurisdiction survives where provided by law. [Citation.]" (*Ibid.*) In the case of habeas corpus proceedings, for instance, section 1506 grants the

superior court continuing jurisdiction to admit to bail a petitioner who had been granted release or, upon application of the People, to stay execution of its order pending final determination of the matter on appeal. (See § 1242 ["An appeal taken by the people in no case stays or affects the operation of a judgment in favor of the defendant, until judgment is reversed."].)

█ In criminal cases, a motion for a new trial is a motion for "re-examination of the issue in the same court . . . after a verdict has been given" (§ 1179), and must be made before the judgment or appealable order is entered (§ 1182). It allows the superior court to "avoid[] appellate review, or habeas corpus proceedings" by entertaining a motion seeking "to ensure that defendants be accorded due process of law" prior to entry of judgment. (*People v. Fosselman* (1983) 33 Cal.3d 572, 582 [189 Cal.Rptr. 855, 659 P.2d 1144].) However, "[p]ostjudgment trial level attacks seeking to nullify convictions and/or sentences come in many forms. They may be called, for example, motions to vacate, motions to correct, or motions to set aside judgments . . . ." (*Gallardo, supra*, 77 Cal.App.4th at p. 980.) In *People v. Wadkins* (1965) 63 Cal.2d 110 [45 Cal.Rptr. 173, 403 P.2d 429] (*Wadkins*), the defendant filed a motion seeking to vacate the judgment of conviction sentencing him to state prison just a few days after the judgment was rendered. Our Supreme Court held that the trial court had jurisdiction to entertain the motion. The motion was filed while the defendant was still in the custody of the county sheriff and no appeal had been filed. (*Id.* at p. 113.) However, " '[i]n most cases, after the judgment has become final, there is nothing pending to which a [postjudgment] motion may attach.' [Citation.]" (*People v. Picklesimer* (2010) 48 Cal.4th 330, 337 [106 Cal.Rptr.3d 239, 226 P.3d 348].)

█ The superior court's power to reconsider its rulings in a criminal action or a special proceeding of a criminal nature is not limited by Code of Civil Procedure section 1008, because that section is not incorporated in part 2 of the Penal Code, the provisions governing habeas corpus proceedings. (§ 690; *People v. Superior Court* (*Laff*) (2001) 25 Cal.4th 703, 728–729 [107 Cal.Rptr.2d 323, 23 P.3d 563]; *Castello, supra*, 65 Cal.App.4th a pp. 1247–1248.) Regardless, Code of Civil Procedure section 1008 does not "limit the court's ability, on its own motion to reconsider its prior interim orders so it may correct its own errors." (*Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1107 [29 Cal.Rptr.3d 249, 112 P.3d 636]; see *Brown, Winfield & Canzoneri, Inc. v. Superior Court* (2010) 47 Cal.4th 1233, 1249 [104 Cal.Rptr.3d 145, 223 P.3d 15].) "In *People v. Jackson* [(1996)] 13 Cal.4th [1164,] 1205 [56 Cal.Rptr.2d 49, 920 P.2d 1254], the court made no mention of [Code of Civil Procedure] section 1008 when it held: 'Because the People's motion to "augment and reconsider" the suppression motion was not governed by [Penal Code] section 1538.5, we agree with the People that the trial court's ability to grant relief is instead controlled by Code of Civil Procedure

section 128, subdivision (a)(8), which states that every court will have the power to "amend and control its process and orders so as to make them conform to law and justice." ' " (*Castello, supra,* 65 Cal.App.4th at p. 1247.)

■ In the proceedings at issue here, the People's motion for reconsideration was equivalent to a nonstatutory motion to vacate the judgment. A nonstatutory motion to vacate in a criminal proceeding need not ask the superior court to evaluate newly discovered evidence. (See *Gallardo, supra,* 77 Cal.App.4th at p. 982, fn. 5.) However, courts must "exercise due consideration before modifying, amending or revoking prior orders. [Citations.]" (*Castello, supra,* 65 Cal.App.4th at p. 1250.) Therefore, we review an order granting or denying reconsideration or to vacate an order granting a petition for writ of habeas corpus for abuse of discretion. (*People v. Alexander* (2010) 49 Cal.4th 846, 871 [113 Cal.Rptr.3d 190, 235 P.3d 873]; see also *People v. Superior Court (Zamudio)* (2000) 23 Cal.4th 183, 192 [96 Cal.Rptr.2d 463, 999 P.2d 686] [an order granting a statutory motion to vacate is reviewed for abuse of discretion].)

*Analysis*

The underlying action in the matter before this court was a habeas corpus proceeding, a special proceeding of a criminal nature in the superior court seeking to overturn a presumptively valid criminal judgment. Therefore, the superior court had the "inherent power" to rehear or reconsider its rulings. (*Castello, supra,* 65 Cal.App.4th at p. 1248.) The court's power to reconsider its rulings was not limited by Code of Civil Procedure section 1008. (*Laff, supra,* 25 Cal.4th at pp. 728–729.) Rather the court had the inherent power to reconsider its order granting the petition for writ of habeas corpus, and that power would only end with its loss of jurisdiction. (*Castello, supra,* 65 Cal.App.4th at p. 1248.) The loss of jurisdiction for purposes of reconsideration of the ruling would occur when the order became final and binding, or when the People filed a notice of appeal from the order. (*Gregory, supra,* 129 Cal.App.4th at p. 329; *In re Crow, supra,* 4 Cal.3d at pp. 621–622; *Wadkins, supra,* 63 Cal.2d at p. 113.) In order to be timely, a notice of appeal from an order granting a petition for writ of habeas corpus in the superior court would have to be filed within 60 days from the filing of the order. (Rule 8.308(a).) Therefore, the superior court would not have lost its inherent power to reconsider and vacate its order granting the petition for writ of habeas corpus in this matter until 60 days after the filing of the order, as long as no notice of appeal had been filed. (*Gregory, supra,* 129 Cal.App.4th at p. 329; *In re Crow, supra,* 4 Cal.3d at pp. 621–622.) The order granting the petition for writ of habeas corpus in this matter was filed on October 27, 2009, the motion for reconsideration was filed on or about November 6, 2009, and the order granting reconsideration and vacating the order granting the petition was filed

on December 18, 2009, well within the 60-day time limit for reconsideration and vacation of the order. As the People had not yet filed a notice of appeal when the superior court granted reconsideration, the superior court had retained its inherent power to reconsider and vacate the order granting the petition for writ of habeas corpus.

■ As we noted in *Board of Prison Terms*, "the well-established rules of habeas corpus procedure provide the superior court with the means of ensuring that the pleadings create a framework in which a court can discover the truth and do justice in a timely fashion." (*Board of Prison Terms, supra*, 130 Cal.App.4th at p. 1239.) "[W]here the superior court determines that the habeas corpus petition has pleading defects and believes that correction of the defects is necessary to ensure a full and fair hearing and a determination of the case, the superior court has the discretion to give notice of the defect and grant leave to amend or supplement the petition." (*Ibid.*) That is what the superior court did in this case when it granted reconsideration, vacated its order granting the petition for writ of habeas corpus, and "invited [petitioner] to supplement his petition for writ of habeas corpus with a claim of ineffective assistance of trial counsel."

Before granting reconsideration and vacating the order granting the petition for writ of habeas corpus, the superior court was required to "exercise due consideration." (*Castello, supra*, 65 Cal.App.4th at p. 1250.) On the record before us, we cannot say that the superior court abused its discretion when it granted reconsideration. The superior court had granted the petition for writ of habeas corpus without holding an evidentiary hearing and without specifying what relief petitioner would receive. The People then presented evidence to the court that they did not have prior to the filing of the return. The court's order granting reconsideration reopened the matter to allow petitioner to file a supplemental petition raising a new claim of ineffective assistance of trial counsel not raised in the original habeas corpus petition (see *Board of Prison Terms, supra*, 130 Cal.App.4th at p. 1239), and to allow the court to hold an evidentiary hearing as to all issues raised in the briefing before it. By doing so, the court could "discover the truth and do justice in [a] timely fashion." (*People v. Duvall, supra*, 9 Cal.4th at p. 482.)

■ We conclude that the superior court in this matter had the inherent power to reconsider and vacate its order granting the petition for writ of habeas corpus, on its own motion or on motion of the People, within the statutory 60-day time period for the People to file a notice of appeal, as long as no appeal had yet been filed. And, on the facts of this case, which involved a petition for writ of habeas corpus seeking to set aside a presumptively valid criminal judgment, the superior court did not abuse its discretion by granting reconsideration of the order granting the petition and inviting supplemental briefing.

## DISPOSITION

The petition for writ of mandate and/or prohibition is denied.

Mihara, J., and McAdams, J., concurred.

Petitioner's petition for review by the Supreme Court was denied February 16, 2011, S188741. Werdegar, J., was of the opinion that the petition should be granted.