Filed 7/22/24  P. v. Harris CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B323462 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA436057) |
| v. | |
| BRYAN HARRIS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Roger Ito, Judge.  Reversed with directions.

Karyn H. Bucur, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Stacy S. Schwartz and Colleen M. Tiedemann, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Bryan Harris of second degree robbery and of attempting to dissuade a witness and found true gang allegations. The trial court imposed a sentence that included a five-year prior under Penal Code[1] section 667, subdivision (a), a 10-year term for a gang enhancement, and an upper term for robbery. Harris appealed, and this division vacated his sentence and remanded for reconsideration of his sentence based on then-recently enacted Senate Bill No. 1393, which gave trial courts discretion to strike five-year priors. On remand, the trial court declined to strike the five-year prior. Harris appeals again, contending that the trial court abused its discretion by declining to strike the prior, that the true findings on the gang allegations should be stricken under Assembly Bill No. 333 (Assembly Bill 333), and that he should be resentenced under Senate Bill No. 567 (Senate Bill 567). We reverse with directions.

## BACKGROUND

I.     The underlying crime[2]

"On April 19, 2015, Isiah Mack was working at a medical marijuana dispensary as an armed security guard. Before letting customers enter, Mack verified they had identification and a doctor's recommendation. That evening, Harris went to the

---

[1]     All further statutory references are to the Penal Code.

[2]     The factual background is from the Court of Appeal opinion affirming with directions Harris's judgment of conviction, *People v. Harris* (Nov. 6, 2019, B285260) [nonpub. opn.]. We take judicial notice of that opinion and of the record. (Evid. Code, §§ 451, subd. (a), 452, subd. (a).)

dispensary by himself and, as he had the appropriate documentation, Mack let him in.

"Less than an hour later, Harris returned with Dharmen Prasad. Having just seen Harris's documentation, Mack again let him in. But when Mack asked Prasad for his documents, Prasad pointed a gun at Mack and asked, 'What are you doing in the hood with a Blood and burner?' Prasad took Mack's gun from its holster and threatened to shoot him. For his part, Harris patted Mack down but also convinced Prasad not to shoot Mack. Prasad left with Mack's gun while Harris looked on. When Mack assured Harris that he had no ill will towards him, Harris agreed and left. A few days later, Harris called Mack and told him that if he did not testify he would get his gun back.[3]

"The People's gang expert testified that Harris and Prasad are Rolling 20's gang members, and the dispensary is in the gang's territory. Based on a hypothetical modeled on the facts of the case, the expert opined that such a robbery would be committed for the benefit of and in association with a gang and such an attempt to dissuade a witness would also benefit the gang." (*People v. Harris*, *supra*, B285260.)

II. Verdict and sentence

A jury found Harris guilty of second degree robbery with a true finding that a principal used a firearm (§§ 211, 12022.53, subds. (b) & (e)(1); count 1) and of attempting to dissuade a witness (§ 136.1, subd. (a)(2); count 2). The jury found true gang allegations as to both counts (§ 186.22, subd. (b)(1)(C)).

---

"[3] Mack used the word testify even though no proceeding had yet been initiated.

On September 20, 2017, the trial court sentenced Harris to the upper term of five years on count 1, doubled to 10 years based on a prior strike, and to a consecutive two years, doubled to four years on count 2. The trial court also imposed a consecutive 10 years (§ 186.22, subd. (b)(1)(C)) and five years (§ 667, subd. (a)(1)). The trial court selected the high term on count 1 because Harris had "an increasing and poor performance on probation."

III. Postjudgment proceedings

Harris appealed the judgment of conviction. While his appeal was pending, Senate Bill No. 1393 became effective, and it gave courts discretion to strike or to dismiss five-year priors imposed under section 667, subdivision (a)(1). This division vacated Harris's sentence and remanded for resentencing so that the trial court could exercise its discretion under the new law. (*People v. Harris*, *supra*, B285260.)

At the September 14, 2020 remand hearing, the trial court declined to exercise its discretion to strike the five-year prior. Harris did not appeal that order and instead filed a motion for resentencing, asking, among other things, for reconsideration of the September 14, 2020 order. The motion was not heard until August 26, 2022, by which time Harris had retained a new attorney who had filed an amended motion. The trial court denied the resentencing motion, finding it had no jurisdiction to hear it.

Harris timely appealed from the August 26, 2022 order, and, as we discuss later, successfully obtained relief from default from failing to appeal the September 14, 2020 order.

4

## DISCUSSION

I.    The trial court did not abuse its sentencing discretion by not striking or dismissing the five-year prior

Harris contends that the trial court abused its discretion by refusing to strike or to dismiss the five-year prior.  We disagree.

When Harris was sentenced in 2017, a trial court had no discretion to strike a section 667, subdivision (a) enhancement.  But Senate Bill No. 1393 (2017–2018 Reg. Sess.) became effective January 1, 2019.  It amended sections 667, subdivision (a), and 1385, subdivision (b), to give a sentencing court discretion to strike or to dismiss a prior serious felony conviction for sentencing purposes.  (Stats. 2018, ch. 1013, §§ 1–2.)

We review a court's decision to deny a motion to strike a five-year prior serious felony enhancement for an abuse of discretion.  (*People v. Brugman* (2021) 62 Cal.App.5th 608, 637–638.)  The party attacking the sentence has the burden of showing that the sentencing decision was irrational or arbitrary, and absent such a showing, we will presume that the trial court acted to achieve legitimate sentencing goals.  (*People v. Carmony* (2004) 33 Cal.4th 367, 376–377.)  Further, we will not reverse a sentencing decision merely because reasonable people might disagree.  (*Id.* at p. 377.)

Here, Harris argues the trial court's refusal to strike the five-year prior was based on a mistake of fact regarding the proximity in time between the current and prior offenses, and, accordingly, the ruling was an abuse of discretion.  The current offenses occurred in 2015, and Harris had a prior conviction for a 2011 robbery.  Yet, during the September 14, 2020 resentencing hearing, the prosecutor mistakenly said the offenses occurred one year apart, rather than four years.

5

A review of the entirety of the hearing, however, does not show that the trial court adopted this mistake of fact. Rather, at the hearing's outset, the trial court said it had reviewed the record of conviction and trial transcripts, and the trial court acknowledged that Harris had dissuaded his accomplice from further violence. Reiterating that it had read the defense motion, record of conviction, and Harris's criminal history "in particular," the trial court said that given its review and "the proximity of time between his criminal history and of this particular event, I am not inclined to utilize any authority" under Senate Bill No. 1393. Harris's original sentence was "fair and just," albeit "harsh." Yet, Harris's "history and involvement" showed that imposing the five-year prior was appropriate.

Defense counsel responded that the enhancement should be dismissed because of the evidence surrounding Harris's involvement in the crime, presumably referring to Harris's attempt to dissuade his accomplice from further violence. The prosecutor then said, "I heard the court saying the fact that his priors from 2014 and the crime he committed was in 2015, so almost within a year the crime was committed. I think that's the main issue I have. It's the same or similar conduct."

The trial court concluded by repeating that it was declining to exercise its discretion "given the circumstances in particular— not this case so much as the proximity of time to a prior conviction for a very, very similar type of offense." Harris's positive intervention during the robbery did not excuse that he had engaged in similar conduct that "was a close proximity in time." The trial court assured Harris that it had read the trial transcript and "saw what you did or did not do."

6

Nothing in this colloquy shows that the trial court based its ruling on a mistaken belief that only a year separated Harris's current and prior offenses. First, the prosecutor made the misstatement, not the trial court. Second, the trial court said it was denying the motion based on its review of the record and the proximity of the current crimes to Harris's prior criminal history *before* the prosecutor misstated that Harris's prior offense was from 2014 (instead of 2011). Stated otherwise, the trial court had already made its ruling before the prosecutor made the misstatement. Third, the trial court repeatedly said it had reviewed the record, including Harris's criminal history. That record states the correct date of the prior conviction, 2011. Therefore, the record affirmatively shows that the trial court knew that the prior robbery conviction was in 2011. But even if the record did not contain this affirmative showing, we would presume that the trial court was aware of the relevant factors absent Harris's failure to establish otherwise. (See *People v. Pearson* (2019) 38 Cal.App.5th 112, 117 [we presume court considered relevant factors].) We therefore conclude that Harris has not shown the trial court abused its discretion by refusing to strike the five-year prior.

II. Harris is entitled to the benefit of ameliorative laws

Harris contends that the true findings on the gang allegations must be vacated due to changes in the law effected by Assembly Bill 333 and that he is entitled to resentencing under Senate Bill 567. Before addressing the merits of Assembly Bill 333 and Senate Bill 567, we first explain why they are properly before us.

7

A. *Harris's conviction is not final*

As we have said, when Harris appealed his judgment of conviction, this division vacated his sentence and remanded the matter so that the trial court could consider whether to strike or to dismiss the five-year prior based on Senate Bill No. 1393. (*People v. Harris*, *supra*, B285260.) At the September 14, 2020 remand hearing, the trial court declined to exercise its discretion to strike the five-year prior. Harris did not appeal that order.

Instead, Harris obtained new counsel who, on January 12, 2021, filed a motion for resentencing, asking, among other things, for reconsideration of the September 14, 2020 order. This motion was in part based on counsel's belief that Harris was unrepresented at the September 14, 2020 hearing. At the January 22, 2021 hearing on the motion for resentencing, the trial court informed the parties that its September 14, 2020 minute order contained a clerical error: it did not state that counsel had represented Harris at the hearing. But the trial court continued the motion so that counsel could obtain a transcript of the September 14, 2020 hearing to verify that Harris was represented at it.[4]

The motion was continued multiple times. At one continuance hearing in May 2022, the trial court reminded counsel that the limited purpose of the remittitur was to consider the five-year prior, so if "you want to file additional motions because he is—his case is potentially not yet final because of the remittitur, then you're welcome to do so. You may have proper

---

[4] The trial court denied the motion to the extent it raised any *Romero* issue, finding it lacked jurisdiction to consider that issue based on the limited nature of the remand order.

grounds for the court's use of additional discretion, but that is something that you can file now."

The motion was finally heard on August 26, 2022, by which time Harris had retained a new attorney who that month had filed an amended motion for (1) resentencing on remand, (2) reconsideration of resentencing on remand, (3) mitigation of the sentence under section 1385, (4) recall and resentencing under section 1170.03, and (5) reduction of the felony to a misdemeanor. The amended motion did not raise Assembly Bill 333 or Senate Bill 567, both of which had become effective on January 1, 2022. At the hearing, the trial court detailed the history of the motion, stating that it had calendared the motion for reconsideration because it mistakenly thought Harris was unrepresented at the September 14, 2020 hearing. Having determined there was no issue about Harris's representation at the September 14, 2020 hearing, the trial court said it did not believe it "at this juncture has additional jurisdiction." The trial court therefore denied the motion, finding it lacked jurisdiction to hear it.

Harris filed a timely notice of appeal from the August 26, 2022 order. Harris's appellate counsel then filed in this court an application for relief from default and to consolidate a constructively filed notice of appeal from the September 14, 2020 order with the August 26, 2022 order. In his declaration supporting the application, Harris stated he could not remember his trial counsel advising him of his right to appeal the September 14, 2020 order, but Harris had wanted to pursue his appellate and any other rights regarding that order. We directed the Attorney General to respond to the application. The Attorney General responded that it did not oppose Harris's application.

9

We granted Harris's application, deemed any notice of appeal from the September 14, 2020 order denying resentencing filed as of October 31, 2023, and consolidated that appeal with the appeal from the August 26, 2022 order. (See generally *In re Benoit* (1973) 10 Cal.3d 72.)

In his opening brief on appeal, Harris argued that the true findings on the gang allegations should be reversed based on Assembly Bill 333, which became effective in January 2022. Harris also filed a supplemental brief asking for remand under Senate Bill 567, which became effective that same date.

Because Harris's trial counsel never raised Assembly Bill 333 below (or Senate Bill 567), even though it had been in effect for eight months by the time of the August 26, 2022 hearing, we directed the parties to address whether that failure constituted a forfeiture on appeal.

In his supplemental brief, Harris argued that no forfeiture occurred because he did not have a "meaningful opportunity" to raise Assembly Bill 333. That is, the trial court lacked jurisdiction to consider the new law and therefore it would have been futile for him to raise it. Harris thus points out that section 1172.1 (former section 1170, subdivision (d)(1)) allows a sentence to be recalled *within* 120 days of sentencing, here, 120 days from September 14, 2020. The mere *filing* of a motion within 120 days is insufficient; rather, any motion must be filed *and ruled on* within 120 days. (See *People v. Chlad* (1992) 6 Cal.App.4th 1719, 1724–1725.) While Harris did file his motion for reconsideration within 120 days of the sentencing hearing, the trial court did not rule on it or recall the sentence within 120 days of September 14, 2020. Accordingly, the trial court had no jurisdiction to

10

resentence Harris, as the trial court ultimately found at the August 26, 2022 hearing.

The People, however, appear to suggest that the trial court's invitation to Harris's counsel at a hearing in May 2022 to "file additional motions because he is—his case is potentially not yet final because of the remittitur" preserved its jurisdiction. Notwithstanding the trial court's invitation, it could not confer jurisdiction where none existed. (See generally *People v. Hampton* (2019) 41 Cal.App.5th 840, 848 [court has no authority to confer jurisdiction upon itself where none exists]; *People v. Berg* (2019) 34 Cal.App.5th 856, 876 [trial court's inherent powers end with the loss of jurisdiction]; *Jackson v. Superior Court* (2010) 189 Cal.App.4th 1051, 1067 [loss of jurisdiction for purposes of reconsideration occurs when the order becomes final and binding].)

The People next argue that, in any event, counsel's failure to raise Assembly Bill 333 and Senate Bill 567 did not prejudice him because those new laws are inapplicable to Harris. That is, those laws apply retroactively to cases not final when the laws became effective on January 1, 2022. (*People v. Tran* (2022) 13 Cal.5th 1169, 1206–1207 [substantive amendments to § 186.22 retroactive]; *People v. Flores* (2022) 73 Cal.App.5th 1032, 1038–1039 [Sen. Bill 567 retroactive to nonfinal convictions on appeal].) The People thus assert that Harris's judgment became final when the remittitur issued in January 2020, which was years before the new laws became effective.

Our California Supreme Court recently addressed when criminal convictions are final for purposes of applying retroactive laws in *People v. Padilla* (2022) 13 Cal.5th 152 (*Padilla*). In *Padilla*, a juvenile was convicted of crimes and sentenced in adult

11

court.  (*Id.* at p. 159.)  Over 10 years after his conviction had become final, he successfully petitioned for a writ of habeas corpus after the law was amended regarding juvenile sentencing.  (*Id.* at pp. 170–171 (dis. opn. of Corrigan, J.).)  The trial court vacated Padilla's sentence, reconsidered it in light of the new law, and reimposed the same sentence.  The Court of Appeal again vacated the sentence and remanded based on another new law regarding juvenile sentencing.  (*Id.* at p. 159.)  Weeks after the Court of Appeal's decision, Proposition 57 passed, providing that a juvenile can be tried in adult court only after a transfer hearing.  (*Id.* at p. 159.)  The trial court, however, did not hold a transfer hearing and again imposed the same sentence on Padilla.  (*Ibid.*)  *Padilla*, at page 160, held that the conviction was not final because the sentence had been vacated when the defendant successfully petitioned for habeas relief.

The People interpret *Padilla* to hold that where an appellate court remands for a limited purpose, such as resentencing, any future litigation is "narrowed to the subject matter of the remand."  To support this interpretation, the People rely on *People v. Lopez* (2023) 93 Cal.App.5th 1110, review granted November 15, 2023, S281488.  In that case, the appellate court conditionally reversed the judgment on direct appeal and remanded with the direction to the trial court to consider striking various enhancements.  (*Id.* at p. 1113.)  At a remand hearing in 2022, the trial court struck an enhancement but refused to consider Assembly Bill 333, which had passed earlier that year.  (*Lopez*, at p. 1115.)  *Lopez*, at page 1120, found that Assembly Bill 333 applied to the defendant on remand, but the trial court had no jurisdiction to relitigate the gang enhancements.  In reaching this conclusion, *Lopez* cited language in *Padilla* that the right

12

and remedy it was recognizing did not allow the defendant to raise claims unrelated to his sentence and that whatever "potential that hearing may have for reducing his punishment (the nonfinal part of his judgment), it does not authorize or constitute relitigation of guilt." (*Padilla*, *supra*, 13 Cal.5th at pp. 169–170.) *Lopez*, at page 1119, interpreted this language to mean that "when an appellate court confirms a judgment as to guilt, reverses it as to the sentence, and orders a limited remand for resentencing," the lower court may act only within the express jurisdictional limits as stated in the remittitur. The court therefore concluded that although the defendant's conviction was nonfinal and Assembly Bill 333 applied, the trial court had no jurisdiction to readjudicate the gang enhancements. (*Lopez*, at p. 1120.)

  *People v. Mitchell* (2023) 97 Cal.App.5th 1127, review granted February 21, 2024, S283474 (*Mitchell*), disagreed with *Lopez*'s interpretation of *Padilla*. *Mitchell*, at page 1130, involved a similar scenario as in *Lopez*: vacatur of the defendant's sentence on appeal and remand for resentencing because an enhancement had been improperly imposed. *Mitchell*, at page 1139, noted that "judgment" and "sentence" are synonymous in criminal cases, so there "is no judgment of conviction without a sentence." Because Mitchell's sentence was still being adjudicated when Assembly Bill 333 took effect, his criminal judgment never became final and he was entitled to the benefit of that new law. (*Mitchell*, at p. 1140; accord *People v. Trent* (2024) 96 Cal.App.5th 33, review granted Dec. 20, 2023, S282644 [vacatur of conviction under § 1172.6 renders conviction not final for purposes of Assem. Bill 333; *People v. Salgado* (2022) 82 Cal.App.5th 376, 380 [resentencing under former § 1170,

13

subd. (d) rendered judgment no longer final]; *People v. Keel* (2022) 84 Cal.App.5th 546, 551 [Prop. 57 and Sen. Bill No. 1391 applied to resentencing after vacatur of conviction]; *People v. Ramirez* (2021) 71 Cal.App.5th 970, 996 [same].)

We agree with *Mitchell*. Where a criminal sentence has been vacated on direct appeal and remanded for resentencing, the conviction is not final and the judgment is reopened for the purpose of retroactive ameliorative laws. Here, this division issued a decision in 2019 vacating Harris's sentence and remanding for the trial court to consider whether to strike the five-year prior. (*People v. Harris*, *supra*, B285260.) The trial court held a resentencing hearing on September 14, 2020, declining to resentence him.

Harris did not then appeal that order. He instead filed a motion for resentencing, which was not heard and denied until August 2022. Harris appealed that order and also asked us to relieve him from default for not having timely appealed the September 14, 2020 order. We granted that relief, which the People did not oppose, and deemed a constructive notice of appeal from the September 14, 2020 order to be timely filed. By virtue of that relief, Harris's conviction was not final as of January 2022, when Assembly Bill 333 and Senate Bill 567 became effective. (See *Mitchell*, *supra*, 97 Cal.App.5th at pp. 1137, 1140 [test for finality is whether criminal prosecution or proceeding concluded before ameliorative legislation took effect].) Therefore, notwithstanding the trial court's correct conclusion that it lacked jurisdiction to resentence Harris, his judgment is no longer final and he is entitled to the benefits of those laws, as we next explain.

14

B. *Assembly Bill 333*

Harris's jury found gang allegations true under section 186.22, and his sentence included a 10-year term under that enhancement. Thereafter, Assembly Bill 333 became effective on January 1, 2022 (see Stats. 2021, ch. 699), and it substantively changed the law on gang enhancements.

"First, it narrowed the definition of a 'criminal street gang' to require that any gang be an 'ongoing, *organized* association or group of three or more persons.' (§ 186.22, subd. (f), italics added.) Second, whereas section 186.22, former subdivision (f) required only that a gang's members 'individually *or* collectively engage in' a pattern of criminal activity in order to constitute a 'criminal street gang,' Assembly Bill 333 requires that any such pattern have been '*collectively* engage[d] in' by members of the gang. (§ 186.22, subd. (f), italics added.) Third, Assembly Bill 333 also narrowed the definition of a 'pattern of criminal activity' by requiring that (1) the last offense used to show a pattern of criminal gang activity occurred within three years of the date that the currently charged offense is alleged to have been committed; (2) the offenses were committed by two or more gang 'members,' as opposed to just 'persons'; (3) the offenses commonly benefitted a criminal street gang; and (4) the offenses establishing a pattern of gang activity must be ones other than the currently charged offense. (§ 186.22, subd. (e)(1), (2).) Fourth, Assembly Bill 333 narrowed what it means for an offense to have commonly benefitted a street gang, requiring that any 'common benefit' be 'more than reputational.' (§ 186.22, subd. (g).) [¶] Finally, Assembly Bill 333 added section 1109, which requires, if requested by the defendant, a gang enhancement charge to be tried separately from all other counts that do not

otherwise require gang evidence as an element of the crime. If the proceedings are bifurcated, the truth of the gang enhancement may be determined only after a trier of fact finds the defendant guilty of the underlying offense." (*People v. Tran* (2022) 13 Cal.5th 1169, 1206 (*Tran*).)

The substantive amendments to section 186.22 apply retroactively to cases not final when Assembly Bill 333 became effective, but the bifurcation proceeding in newly added section 1109 is not retroactive. (*People v. Burgos* (2024) 16 Cal.5th 1.)

Although Harris has failed on appeal to address in what ways the new statutory requirements of section 186.22 were not met,[5] the evidence, at a minimum, did not establish that the predicate and underlying offenses provided more than a reputational benefit to the Rolling 20's gang. (§ 186.22, subds. (e)(1) & (g).) Rather, Officer John Thompson testified as a gang expert for the People. Based on his prior contacts with Harris and Harris's admission that he was a Rolling 20's gang member, the officer opined that Harris is a Rolling 20's gang member.[6] The underlying crime occurred in the gang territory of the Rolling 20's, whose primary activities are murder, assault with a deadly weapon, "business robberies, street robbery," narcotics sales, vandalism, loitering, trespassing, firearm

---

[5]     Appellate counsel's failure to address this issue could constitute a forfeiture on appeal. (See generally *City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286–287; *Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52.) However, we address the merits because the issue affects Harris's substantial rights. (§ 1259.)

[6]     The expert also testified that Prasad is a Rolling 20's gang member.

16

possession, thefts, and burglary.[7]  The expert further testified that gang members commit crimes in their own territory to "instill fear within that community."  Committing a crime such as the one here "benefits the gang by showing their power and status within the community and intimidating fear into the community by having . . . that gun."

This testimony established merely that Harris's crimes furthered his gang's reputation by instilling fear in the community.  The expert officer did not testify that some other benefit accrued to the gang other than this vague, reputational one.  This evidence was therefore insufficient to support the true findings on the gang allegations.  (See, e.g., *People v. E.H.* (2022) 75 Cal.App.5th 467, 479–480 [court could not rule out possibility jury relied on reputational benefit as basis for true finding even though there was evidence of financial benefit].)

Where, as here, the jury was not presented with any theory as to how the crimes benefitted the gang beyond a reputational benefit, reversal of the true findings on the gang allegations is required.  (*Tran, supra*, 13 Cal.5th at p. 1207.)  The "remedy for this type of failure of proof—where newly required elements were 'never tried' to the jury—is to remand and give the People an opportunity to retry the affected charges." (*People v. E.H., supra*, 75 Cal.App.5th at p. 480.)[8]

---

[7]  Loitering, vandalism, and trespassing are not qualifying predicate offenses.  (§ 186.22, subd. (e)(1).)

[8]  Harris has not raised any issue regarding section 1109 and, in any event, the section is not retroactive. (*People v. Burgos, supra*, 16 Cal.5th at p. 29.)

17

C. *Harris may raise Senate Bill 567 on remand*

When Harris was originally sentenced in 2017, the trial court had discretion under the determinate sentencing law to select among the upper, middle, and lower terms. (See generally *People v. Dunn* (2022) 81 Cal.App.5th 394, 402, review granted Oct. 12, 2022, S275655.) The trial court here exercised its discretion to impose the upper term on count 1 based on its finding that Harris had performed poorly on probation. Effective January 1, 2022, Senate Bill 567 (2021–2022 Reg. Sess.) amended section 1170 to make the middle term the presumptive term. A trial court thus may now impose the upper term only "when there are circumstances in aggravation of the crime" that justify imposing a term of imprisonment exceeding the middle term, and the defendant has stipulated to the facts underlying those circumstances or those facts have been found true beyond a reasonable doubt at trial by the trier of fact. (§ 1170, subd. (b)(2); see generally *People v. Lopez* (2022) 78 Cal.App.5th 459, 464–465.) However, the trial court may consider the defendant's prior convictions based on certified records of conviction to determine the sentence to impose without submitting the prior convictions to the jury. (§ 1170, subd. (b)(3).)

Senate Bill 567 applies to defendants whose judgments were not final when the law went into effect. (*People v. Dunn, supra*, 81 Cal.App.5th at pp. 402–403.) As we have said, Harris's conviction was not final when the law went into effect. Therefore, the trial court may consider Senate Bill 567 at the time of any resentencing.[9]

---

[9] Because we are remanding for a possible retrial of the gang allegations or resentencing, we decline to consider whether any error in not considering Senate Bill 567 was harmless.

## DISPOSITION

The true findings on the Penal Code section 186.22 gang allegations are reversed with the direction to the trial court to give the prosecution an opportunity to retry the gang allegations against Harris under amended section 186.22. If the People elect not to retry those allegations, the trial court shall resentence Harris.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EDMON, P. J.


We concur:


EGERTON, J.


ADAMS, J.