[Civ. No. 22318. Fourth Dist., Div. One. Aug. 26, 1980.]

ROBERT CLIFTON MARLER et al., Plaintiffs and Appellants, v. THE MUNICIPAL COURT FOR THE SAN DIEGO JUDICIAL DISTRICT OF SAN DIEGO COUNTY, Defendant and Respondent; THE PEOPLE, Real Party in Interest and Respondent.

## Counsel

Hecht, Diamond & Greenfield and Roger Jon Diamond for Plaintiffs and Appellants.

No appearance for Defendant and Respondent.

John W. Witt, City Attorney, Ted Bromfield, Chief Deputy City Attorney, and S. Patricia Rosenbaum, Deputy City Attorney, for Real Party in Interest and Respondent.

OPINION

STANIFORTH, J.—Robert Clifton Marler, Kenneth L. Bryant and Dolye M. Russell sought a writ to prohibit the municipal court from proceeding with trial of misdemeanor obscenity charges. The superior court denied their petition and this appeal followed.

The facts are undisputed. The San Diego City Attorney filed separate misdemeanor obscenity cases (Pen. Code, § 311.2, subd. (a)) against Gary Bartanen and the three appellants; each involved the same sale of an allegedly obscene magazine on December 7, 1978. After negotiating a plea with Bartanen, the People moved to dismiss the cases against Marler, Bryant and Russell. Appellants were not notified of, did not participate, were not parties to this or any plea bargain although Attorney James Pasto represented to the court he was the attorney for all four defendants.

The dismissals were entered July 10, 1979, and read: "Dismissed on motion of. . ./ DCA in futherance of justice /. . .in view of plea on Gary Barpanen [sic] M 290614."

On August 6, 1979, the People moved to set aside the dismissals in each of the four cases in response to Bartanen's motion, filed by his originally retained attorney, Diamond, to set aside *his* (Bartanen's) guilty plea on the grounds Attorney Pasto, who was hired to handle preliminary matters in the four cases, had entered Bartanen's plea without authority. At the hearing before the municipal judge (Aug. 8, 1979) Attorney Pasto as well as Bartanen "were sworn and examined." The court then continued the matter to August 22, 1979, instructed Pasto to return with his file and secretary and issued subpoenas for Bryant, Marler and Russell, the dismissed defendants in the three separate cases.

At the August 22 proceedings these events took place. The hearing was not only on Bartanen's motion to set aside his plea, but also on the People's motions to reinstate the Bryant, Marler and Russell cases. The record is bare of any notice to these three appellants as to the nature of or time for these proceedings. They were without counsel. Bartanen's attorney, although originally representing all four, now represented Bartanen only in a hostile, adverse position to that of appellants. Success on his motion threatened to jeopardize their dismissal. Only after the court

had set aside Bartanen's plea and reinstated the charges against all parties, did Bartanen's attorney (Diamond), on the record, get appellants' consent to represent them to seek a writ of prohibition in the superior court.

The substance of the hearings is a model for violation of a defendant's (or prospective defendant's) rights. The municipal court called each of appellants as a witness, then examined him without advising as to his right to counsel or Fifth Amendment rights. Attorney Diamond then *cross-examined* his own former client (and client to be). The substance of the examination by the court came perilously close to and at times appeared to encroach on areas protected by the Fifth Amendment as well as lawyer-client privilege areas.

In sum, the municipal court in a proceeding of which these parties had no notice whatsoever and were not represented by counsel, set aside a then *final order of dismissal of misdemeanor* that had been granted on Penal Code section 1385 grounds and "reinstated" the original charges not only as to Bartanen but as to Bryant, Marler and Russell.

DISCUSSION

I

■ The original order (July 10, 1979) of the municipal court dismissing the misdemeanor charges against Bryant, Marler and Russell was an appealable order. (Pen. Code, § 1466; *People* v. *Municipal Court* (1971) 14 Cal.App.3d 362, 366 [92 Cal.Rptr. 248].) No appeals were taken from these orders although the People had actual notice of Bartanen's motion to set aside *his* plea well within the 30-day rule time for appeal. (Cal. Rules of Court, rule 182.) Rather than exercise their right to appeal, if the dismissals were erroneously granted, the People sought, in a hearing devoid of fundamental fairness to these appellants, to vacate the dismissals, reinstate the charges.

There is no doubt but the People's contentions and actions as regard Bartanen were legally sound. Bartanen sought the hearing to set aside the judgment based upon his plea bargain. He had counsel present. His successful attack on the plea bargain gave rise to *his* consent to restoration of the dismissed charges as to him. (*People* v. *Collins* (1978) 21 Cal.3d 208, 215 [145 Cal.Rptr. 686, 577 P.2d 1026].) ■ However,

the rule of *People* v. *Collins* does not factually or by its reasoning extend to cover nonparties to the plea bargain, third party beneficiaries of a plea bargain wherein misdemeanor charges were dismissed in furtherance of justice. (Pen. Code, § 1385.)

· Penal Code section 1387 precludes such tactic when it provides: "An order for the dismissal of an action pursuant to this chapter is a bar to any other prosecution for the same offense if it is a felony and the action has been previously dismissed pursuant to this chapter, or if it is a misdemeanor; except in those felony cases where subsequent to the dismissal of the felony the court finds that substantial new evidence has been discovered by the prosecution which would not have been known through the excercise of due diligence at or prior to the time of dismissal." "As should be commonly known, the municipal court's dismissal of . . . misdemeanor charges *operated as 'a bar to any other prosecution'* of [these appellants] for the same offenses." (*Collins* v. *City and County of San Francisco* (1975) 50 Cal.App.3d 671, 675 [123 Cal.Rptr. 525]; italics added.)

Although section 1387 has been amended many times since the year 1872, yet this universally accepted interpretation of the section has remained the same. (*People* v. *Smith* (1904) 143 Cal. 597, 599 [77 P. 449]; *People* v. *Ring* (1937) 26 Cal.App.2d Supp. 768, 770 [70 P.2d 281]; *People* v. *Aiken* (1951) 108 Cal.App.2d 343, 345 [238 P.2d 1019]; *People* v. *Cossio* (1977) 76 Cal.App.3d 369, 372 [142 Cal.Rptr. 781]; *People* v. *Williams* (1969) 71 Cal.2d 614, 623 [79 Cal.Rptr. 65, 456 P.2d 633].) And "[w]hatever the reason, the charge being a misdemeanor, the dismissal by the justice finally determined the case (Pen. Code, sec. 1387), and the reasons became immaterial." (*Donati* v. *Righetti* (1908) 9 Cal.App. 45, 49 [97 P. 1128]; *In re Krieger* (1969) 272 Cal.App.2d 886, 890 [77 Cal.Rptr. 822].)

"[T]he [misdemeanor] criminal charge could not be refiled." (*Leonard* v. *City of Los Angeles* (1973) 31 Cal.App.3d 473, 478 [107 Cal.Rptr. 378].) And where "their character as misdemeanors persisted, dismissal of the complaint barred further prosecution." (*Malone* v. *Superior Court* (1975) 47 Cal.App.3d 313, 319-320 [120 Cal.Rptr. 851].)

The foregoing more than century-long consistent interpretation of the statutory language rests upon the commonly understood meaning of the phrase "bar to any other *prosecution* for the same offense." ▮ The

term "prosecution" is sufficiently comprehensive so as to include every step in an action from its commencement to its final determination. (*Ray Wong* v. *Earle C. Anthony, Inc.* (1926) 199 Cal. 15, 18 [247 P. 894]; *Melancon* v. *Superior Court* (1954) 42 Cal.2d 698, 707-708 [268 P.2d 1050]; *Barber* v. *Lewis and Kaufman, Inc.* (1954) 125 Cal. App.2d 95 [269 P.2d 929]; Black's Law Dict. (4th ed.) p. 1385.)

In *Thacker* v. *Marshall* (Okla. 1958) 331 P.2d 488, 492, footnote 4, it was stated: "'By the term "the prosecution," as used in a criminal case, is meant the continuous following up, through instrumentalities created by law, of a person accused of a public offense with a steady and fixed purpose of reaching a judicial determination of the guilt or innocence of the accused. It should not be confounded with the written accusation, nor is the term synonymous with criminal action. It consists of all the successive steps, having relation to each other, taken against the accused by the officer or officers charged with the enforcement of the criminal law....'" ■ Thus the term "bar to any other prosecution for the same offense" would prohibit not only refiling anew but also a "reinstatement" of the original complaint on an ex parte motion of the People. Each is but one of the many possible steps in "criminal proceedings with the purpose of reaching a judicial determination of the guilt or innocence of the accused."

The People would avoid the effect of clear statutory intent by a misplaced reliance upon *People* v. *Collins, supra*, 21 Cal.3d 208, 215. *People* v. *Collins* is not in point. These appellants did not seek to withdraw from any plea bargain. They were never consulted, involved in the plea bargain Bartanen's attorney made with the People. They were in fact informed of the "bargain" resulting in dismissal of their separate actions only after the fact. Thus they were neither a party to the original bargain or to the motion to set that bargain aside. Their sole connection with the proceeding to set aside *their* dismissal was a subpoena to appear in Bartanen's matter. There, they appeared, not only sans attorney, but their former attorney was cast in an adverse-hostile position to each of them. These appellants bear no resemblance to *Collins, supra*, either factually or in underlying principles.

The People, undaunted by the clear language of Penal Code section 1387 or the inapplicability of *People* v. *Collins, supra*, assert that reinstatement was proper; that "prosecution" of the misdemeanors were proper after a dismissal under Penal Code section 1385 because *jeopardy* had not attached. ■ The bar of section 1387 as to the

prosecution of a dismissed misdemeanor is not dependent upon any double jeopardy concept for vitality. In *In re Krieger, supra*, 272 Cal.App.2d 886, 890, the court stated: "We agree with the municipal court judge that release of the petitioner may not be in the immediate best interests of society, but in light of *In re Bevill...* and section 1387 of the Penal Code, denial of the writ would violate due process of law guaranteed by the Fourteenth Amendment of the federal Constitution and article I, section 13, of the state Constitution."

Krieger then discussed in depth the finality of the "bar to prosecution" (§ 1387) effect of a Penal Code section 1385 dismissal of a misdemeanor. The court discussed a second basis for its rule commencing "and moreover," then outlining a second and distinct basis for precluding further prosecution of the petitioner who had entered a guilty plea—for constitutional jeopardy had attached. Jeopardy rests upon constitutional premises; the bar of Penal Code section 1387 is purely statutory.

If we view the facts here in the light most favorable to the judgment, it appears the People—for reasons not explained—failed to require these three defendants to enter into any plea bargain whatsoever, failed to condition the dismissals of these nonparticipating third party beneficiaries upon the continued integrity of the Bartanen plea bargain. In short, a failure to beware of that commonly known effect "of dismissal of a misdemeanor under Penal Code section 1385" contributed to the People's dilemma. But as this court once philosophically observed (*People* v. *Municipal Court, supra*, 14 Cal.App.3d 362, 366): "If the People had their pockets picked in [this] criminal case, it was because they neglected to button down the flaps."

■ While a final judgment of dismissal may be subject to the inherent power of the court to vacate where procured by fraud (see Witkin, Cal. Criminal Procedure (1978 supp.) Judgment and Attack in Trial Court, §§ 628-629), yet this approach fails here for multiple reasons, not the least is that these appellants committed fraud on no one. The municipal court had no lawful basis to "reinstate" the charges against these appellants in violation of the plain dictate of Penal Code section 1387.

## II

In view of the reversal required by reason of the statutory command, we do not approach or determine the constitutional challenge to the reinstatement that is grounded upon those extraordinary procedures followed by the municipal court in arriving at its July 10 orders of reinstatement.

## III

■ Finally appellants urge the return of their filing fee. Where "a proceeding for an extraordinary writ is brought in the superior court which arises out of a criminal proceeding in the municipal court, such writ proceeding, however denominated in nature as an entity in itself, must be regarded as a part of the underlying criminal action so as to be exempt from the requirement of a filing fee under section 26857 [Gov. Code]." (*Bravo v. Cabell* (1974) 11 Cal.3d 834, 840 [114 Cal.Rptr. 618, 523 P.2d 658]; fn. omitted.) The clerk is therefore ordered to refund petitioners' filing fee.

The superior court is instructed to let a peremptory writ of prohibition issue restraining respondent municipal court from any further proceedings in M290618, M290615, and M290616 in said municipal court except to enter an order of dismissal as to Marler, Bryant and Russell.

Judgment reversed.

Brown (Gerald), P. J., and Cologne, J., concurred.

On October 22, 1980, the opinion was modified to read as printed above.