Filed 9/28/15

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**THIRD APPELLATE DISTRICT**

**(Placer)**

**----**

| | |
|---|---|
| Conservatorship of the Person and Estate of CHRISTOPHER B. | C077467 |
| | (Super. Ct. No. SMH0001523) |
| MAUREEN F. BAUMAN, as Public Guardian, etc., | |
| Petitioner and Appellant, | |
| v. | |
| CHRISTOPHER B., | |
| Objector and Appellant. | |

APPEAL from a judgment of the Superior Court of Placer County, Michael W. Jones, Judge. Reversed.

Gerald O. Carden, County Counsel, Valerie D. Flood, Chief Deputy County Counsel, Roger B. Coffman, David K. Huskey and Renju P. Jacob, Deputy County Counsel, for Petitioner and Appellant.

Timothy E. Warriner, under appointment by the Court of Appeal, for Objector and Appellant.

1

Objector Christopher B. appeals from the order of the probate court (following a bench trial) granting the petition of the Placer County Public Guardian to establish a conservatorship over the objector's person and estate. Christopher B. argues there is insufficient evidence of a pending indictment in underlying criminal proceedings, a jurisdictional prerequisite for his "Murphy conservatorship" under the Lanterman-Petris-Short Act. (Welf. & Inst. Code, §§ 5000 et seq., 5008, subd. (h)(1)(B), 5361; Pen. Code, § 1370.) Named after the legislator who sponsored the 1974 amendment that added a second definition of "gravely disabled" to the act (Stats. 1974, ch. 1511, § 12, pp. 3321-3322), the Murphy conservatorship is a renewable one-year civil commitment for criminal defendants who are otherwise incompetent to stand trial for a felony involving death, great bodily harm, or a serious threat to the physical well-being of another, and who do not have the prospect of a restoration of competency. (*People v. Karriker* (2007) 149 Cal.App.4th 763, 775; *In re Polk* (1999) 71 Cal.App.4th 1230, 1237.) Christopher B. also contends the evidence does not support imposition of a restriction on his right to enter into contracts. The Public Guardian cross-appeals, contending the probate court imposed an incorrect termination date for the renewed conservatorship. We will vacate the order imposing the conservatorship with directions to dismiss the petition. This disposition moots the issue of the contractual restriction and the cross-appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

Given the narrow focus of the legal underpinning for the Murphy conservatorship, we do not need to relate the evidence at trial. We draw some of the following facts from our opinion in Christopher B.'s appeal from the first effort to establish a conservatorship over his person and estate. (*Conservatorship of Christopher B.* (Mar. 6, 2014, C073478) [nonpub. opn.].)

In September 2003, Christopher B. entered a plea of no contest to stalking and possessing a billy club. The conduct was directed at his ex-wife's former husband.

2

Christopher B. has subsequently denied any wrongdoing, attributing the plea to ineffective assistance of counsel in resolving a series of events he characterized as coincidental and unfortunate.

From 2005 through 2007, Christopher B. was found to be a mentally disordered offender (Pen. Code, § 2960 et seq.) and placed in a state hospital. He would not accept the diagnosis that he has a delusional disorder, and has refused voluntary treatment. By February 2008, Christopher B. had been under commitment for the full length of the prison term for his offense, and the state hospital released him.

Following his release, Christopher B. harassed his ex-wife and his stepdaughter. This resulted in a June 2009 complaint alleging criminal threats, stalking, and being a felon in possession of a gun (Placer County case No. 62-090819). After holding a hearing in July 2009, the criminal court found Christopher B. was not competent to stand trial; the criminal proceedings were suspended, and in September 2009 the court ordered his transfer to the custody of a state hospital. At the conclusion of the three-year maximum period of commitment (Pen. Code, § 1370, subd. (c)(1)), the state hospital found that Christopher B. could not be restored to competency because he refused voluntary treatment under his ongoing belief that he does not have any mental disorder. The state hospital recommended the institution of a Murphy conservatorship.

Given the imminent expiration of the commitment to the state hospital, and unable to file an information based on the 2009 complaint because of the stay on the criminal case, the district attorney obtained a grand jury indictment on the same charges in August 2012 (*People v. Carrington* (2009) 47 Cal.4th 145, 180-181 [indictment is independent of complaint and information; thus prosecution may seek former even while latter stayed and even without dismissing latter]) in order to satisfy the prerequisite for a Murphy conservatorship. (Welf. & Inst. Code, § 5008, subd. (h)(1)(B)(ii) [in order for

incompetent criminal defendant to come within definition of "gravely disabled" for imposition of conservatorship, indictment or information must still be pending].)

In March 2013, the Public Guardian obtained an order establishing a Murphy conservatorship over Christopher B. and his estate. We reversed the order in March 2014 because of an absence of sufficient admissible evidence of his incompetence to stand trial in the criminal proceedings as of the time of the conservatorship proceedings. We also found that the trial court had failed to obtain Christopher B.'s express personal waiver of a hearing before it imposed a contractual disability on him pursuant to stipulation of his attorney. Our remittitur issued in May 2014. (*Conservatorship of Christopher B.*, *supra*, C073478.)

This concludes the historical prologue. We come to the facts that are at the heart of the present appeal.

While the previous appeal was pending, the criminal court (Hon. Frances Kearney) convened with counsel in defendant's absence on June 19, 2013, for a status conference in case No. 62-090819. The trial court began, "[this] matter is on today for review. And it's my understanding that there has been established now a Murphy's conservatorship, and [defendant] is . . . subject to further review now on the probate conservatorship calendar. So, in light of that, I believe the People are now moving to dismiss the *charges* . . . ; is that correct?"[1] (Italics added.) The prosecutor replied, "We would so move based on the establishment of the Murphy's conservatorship." The court responded, "That will be the Court's order. No further reviews." The form minute order has a check next to the box for "Dismissed" (with the case number handwritten next to

---

[1] Although the criminal matter is suspended during a defendant's incompetence, there is an express exception for a motion to dismiss pursuant to Penal Code section 1385. (Pen. Code, § 1370, subds. (a)(1)(B), (d).)

4

it), and "[Defendant] in Murphy's Conservatorship" is handwritten in a lower comment section.

On the following day, the criminal court reconvened. The trial court had defense counsel on the phone; the prosecutor was personally present. The trial court told defense counsel, "we needed to confirm with you . . . , as you know, there's a Murphy's in this case. [¶] And yesterday inadvertently—well, I guess, what the People are asking me to clarify is that the complaint that was dismissed yesterday is directed solely to the original [2009] complaint and not to the subsequent [2012] indictment, because you do need to have [at least] an indictment in effect in order for the Murphy's to remain in effect. [¶] If we are all in agreement on that—I'll just clarify the underlying original complaint was dismissed but not the indictment. . . . [¶] . . . [W]hat's been represented to me is if you don't have that in effect, then the Murphy's goes away. So we don't want that to happen. [¶] So do you want me to just put it back on calendar next Wednesday?" This apparently being defense counsel's desire, the court set the matter for the following week. After hanging up the phone with defense counsel, the court then told the prosecutor, "She doesn't recall us trying to differentiate. So you should probably talk to her between now and then, because I don't think you guys want the Murphy's to go away." In response to the prosecutor's request for clarification, the court stated, "To be clear: Pending the hearing next week, the Court has determined that there is still pending before the Court an indictment and the Murphy's is thus still in effect. . . . But for right now, the underlying complaint is dismissed but not the indictment."

At the hearing on June 26, 2013, the trial court described the focus of the hearing on June 19 as having involved "some discussion as to what happens with" the criminal case (No. 62-090819) in light of the conservatorship; "And the Court recited certain understandings for the record. And I believe the People said yes." The trial court noted it had not yet received a transcript of the proceedings on June 19, but the court reporter

5

had read her notes to the court's clerk, which the court shared in chambers with counsel. Somewhat at odds with the transcript we have quoted above, the trial court summarized it as, "The general idea, as to what was said, is that the Complaint is being dismissed. And [the] answer was 'yes.' [¶] Subsequently, there was some concern expressed by both the People and the Defense . . . as to whether or not that then affected the . . . Indictment. [¶] And, in point of fact, you need that as a basis for the Murphy's Conservatorship . . . ."

Defense counsel asserted, "As far as we're concerned, the case was dismissed last week. . . . [¶] If the People are asking to reconsider that motion, I think that would be their motion." The prosecutor responded, "the case was on for just a review to see whether the Murphy's Conservatorship had been established in the case. And it was. . . . [¶] And then the inquiry was made whether we should dismiss *the case*, *the Complaint*, in that matter. . . . [¶] I'm not aware that there was an Indictment [at issue] at that time . . . . And I believe that the Complaint, that the original Complaint, could be dismissed. But the Indictment would not be included in that dismissal. . . . [¶] . . . I believe [that the transcript] doesn't specifically list the Indictment. And the intention of this Court in this case was not to undermine the Murphy's Conservatorship. So we would ask that the Indictment still stand at this point." (Italics added.) Defense counsel replied, "[W]e discussed the case, itself, being dismissed. We didn't discuss a Complaint versus an Indictment being dismissed. [¶] And, as far as that goes, I think what's done is done. What happened last week, the case was dismissed." The trial court adhered to its "impression" that only the 2009 complaint had been at issue. "So . . . I am going to interpret the People's motion as being to dismiss the . . . Complaint . . . and not . . . the Indictment . . . . And, certainly, it was not my intention to in any way disturb the Murphy's Conservatorship. And, in point of fact, the purpose of the hearing was to make sure [Christopher B.] had been released . . . on the Murphy's Conservatorship . . . ." The trial court then set the matter for hearing on the following week to confirm its ruling after

6

having an opportunity to review a written transcript from the June 19 status conference. The minute order for the June 26 hearing included a handwritten note that the "Complaint . . . is dismissed. The Indictment is not dismissed."

The court met with the parties on July 3, July 10, and July 24 to determine if they had received copies of all the pertinent transcripts. On the last of these dates, defense counsel confirmed she had received the necessary transcripts. The court asked, "At this point, you wish to drop the matter?" She responded, "Yes." The prosecutor then told the court, "We don't need any further review since he's gone to Murphy's and that's in a separate court." The court replied, "All right. The matter will be dropped." There apparently was a minute order on August 3, 2013 (not included in the present record), confirming the June 26 minute order. In the present proceedings, new defense counsel stated that his office had not sought appellate review of the criminal order because as a tactical matter his office believed the conservatorship was "the [most] appropriate time" to litigate the issue.[2]

In light of our reversal of the previous order establishing the Murphy conservatorship, the Public Guardian petitioned for a temporary conservatorship in March 2014, which the probate court granted. At the outset of the proceedings on the present petition for a permanent conservatorship in September 2014, new defense counsel noted that it was the position of his office that the criminal case "was dismissed," despite the conclusion of the criminal court that "it wasn't dismissed; or, if it was, it was done inadvertently and that was not the intent of the parties. I'm in a position where I have to take a hard line on that, but I don't believe there's any further litigation to be done on that

---

[2] However, Christopher B.'s trial counsel filed a petition for a writ of prohibition with a request for stay in both the criminal and conservatorship matters. We issued an order denying the writ as untimely in the criminal matter and unnecessary in the conservatorship matter in light of the pending appeal. (*Christopher B. v. Superior Court* (Feb. 11, 2015, C078343) [order].)

issue." The trial court disagreed, asserting that this was an evidentiary matter for the present proceedings, and queried about the purpose to be served in the criminal court of merely dismissing a superfluous complaint: "I don't understand why that would happen, why that would occur. I can't think of any reason." Counsel for the Public Guardian asserted that regardless of whether the criminal court was correct or not in construing its order as being limited to the complaint, the criminal court's order was final and not presently subject to challenge.

After briefing on the issue, the trial court ruled as follows. "I don't know that anybody here can dispute with me that the court record says the charges are dismissed [on June 19] . . . in . . . [that] criminal case number. The Indictment . . . has that case number on it. [¶] . . . There is not a separate case number for the Indictment." The trial court also highlighted the criminal court's use of the word "inadvertently" on June 20. It concluded the prosecutor had erred in acceding to dismissal of the case, and then must have brought the need for a pending indictment to the attention of the criminal court. The trial court concluded that the June 19 order of dismissal divested the criminal court of further jurisdiction, so the subsequent criminal proceedings were irrelevant. The trial court further concluded that the criminal court was without jurisdiction even to issue the June 19 order because the criminal proceedings had been suspended.[3] The trial court asserted this was a tentative decision on an evidentiary matter to be addressed at trial, which it would revisit.

On September 11, 2014, at the conclusion of the bench trial on the permanent conservatorship petition, defense counsel asked for clarification of the trial court's ruling on the issue of a pending indictment. The trial court reiterated its belief that the criminal

---

[3] As we noted above, a motion to dismiss is an express statutory exception to the suspension of proceedings during incompetency. The trial court later acknowledged this provision.

court did not have jurisdiction to dismiss the case on June 19, 2013 (due to the previous suspension of the criminal proceedings as a result of Christopher B.'s incompetency), and further, the criminal court's order of dismissal was not valid because the minute order did not include an adequate statement of reasons in compliance with Penal Code section 1385 (citing *People v. Bonnetta* (2009) 46 Cal.4th 143; *People v. Superior Court* (*Flores*) (1989) 214 Cal.App.3d 127). The court thus found the Public Guardian had sustained its burden, and it imposed a permanent conservatorship; defense counsel stipulated to the finalization of the proposed letters of conservatorship, which included a prohibition on Christopher B.'s right to contract. At the behest of the Public Guardian, the trial court set the expiration of the conservatorship for March 2015. At a subsequent hearing on October 3, 2014, the trial court denied the Public Guardian's request to set the expiration of the conservatorship for September 2015 (the correct date (Welf. & Inst. Code, § 5361)) because Christopher B. had already filed a notice of appeal.

## DISCUSSION

Although a trial court retains jurisdiction to correct *clerical* error (i.e., an error in the *recording* of a judgment) at any time, it does not have jurisdiction to correct *judicial* error in an entered judgment (i.e., an error in *rendering* a deliberate "exercise of judicial discretion"). (*In re Candelario* (1970) 3 Cal.3d 702, 704-707 [omission of a recidivist finding in pronouncement of judgment cannot be corrected in trial court, and must be deemed an acquittal of the finding].) Correction of judicial error, "being in excess of the court's jurisdiction is ineffective for any purpose" (*id*. at p. 708), in other words, void (7 Witkin, Cal. Procedure (5th ed. 2008) Judgment, § 343(3), p. 953). It does not matter that a court or moving party acted under a mistake as long as the court "was performing the act it intended to perform." (*Smith v. Superior Court* (1981) 115 Cal.App.3d 285, 292 (maj. opn. of White, P. J.) (*Smith*).)

9

While a trial court has inherent jurisdiction to reconsider erroneous orders, this is limited to interim matters. (Compare *People v. DeLouize* (2004) 32 Cal.4th 1223, 1231-1233 [order granting new trial does not have final *effect* on case and therefore may be reconsidered; this does not offend policies favoring finality of judgments], *People v. Nesbitt* (2010) 191 Cal.App.4th 227, 238 [may reconsider dismissal of two counts *before* entry of judgment], *People v. Castello* (1998) 65 Cal.App.4th 1242, 1246, 1247-1248 [may reconsider ruling that did not sustain recidivist finding *before* entry of judgment; "few limits" on inherent constitutional power to reconsider], *Castello,* at p. 1249 [it would impair operations of court to require "infallibility" in interim rulings], and *In re Anthony H.* (1982) 138 Cal.App.3d 159, 164-166 [may reconsider oral dismissal of one count *before* entry of written order in minutes] with *Smith*, *supra*, 115 Cal.App.3d at pp. 288-292 [grant of prosecution's motion to dismiss premised on mistaken factual basis; could not vacate this final order on the following week]; see *Smith*, at pp. 292, fn. 3 [reserving issue of whether court may vacate order of dismissal entered as a result of a *fraud* upon the court] & 293, fn. 4 [noting that court may vacate a final judgment if in "excess" of jurisdiction, such as an unlawful sentence]; see also *Smith*, at p. 294 (dis. opn. of Scott, J.) [trial court had inherent power to grant relief for inadvertence or excusable neglect]); *Marler v. Municipal Court* (1980) 110 Cal.App.3d 155, 159, 162 [cannot reconsider misdemeanor dismissal order].)

In the present case, the criminal court issued an order of dismissal unambiguously dismissing the entire case at the request of the prosecution. Having realized the effect on the continued viability of the conservatorship proceeding, the prosecutor then sought on the next day to convince the criminal court to "clarify" that its ruling applied only to the underlying complaint. (It is unclear why the prosecutor chose to pursue this subterfuge rather than take the straightforward route of seeking a reindictment; at oral argument the

10

parties did not explore, beyond conclusory assertions with limited analysis, whether a second prosecution would have been time barred.)

As a result, the criminal court's transparent efforts to garb its reconsideration of its dismissal of the criminal case in the cloak of "interpreting" an otherwise unambiguous dismissal order to be one for the unnecessary act of dismissing a superseded complaint are unavailing.  It did not have jurisdiction to correct its judicial error, and its subsequent orders are void on their face.  They are therefore subject to collateral challenge in the present proceedings even though Christopher B. did not appeal from the criminal case.

The Public Guardian attempts to sustain the subsequent orders on the basis of the inadequacies of the order of dismissal under Penal Code section 1385.  Echoing the trial court in this matter, the Public Guardian contends dismissal was ineffective because the minute order does not adequately state reasons explaining why the dismissal is in the interests of justice. (We note that a recently effective amendment to Penal Code section 1385 dispenses with the need for a written statement of reasons, except on request of the parties or where the proceedings are not being recorded.  This amendment does not have any bearing on this appeal, however.)  Notably absent from the Public Guardian's list of authorities, however, are the cases explaining that a defective order of dismissal pursuant to the statute is *voidable*, not *void*, for which reason a failure to raise a contemporaneous objection to the order's defects in the trial court forecloses the parties from raising the issue on appeal, and renders defects on the prosecutor's motion to be invited error on appeal. (*Smith*, *supra*, 115 Cal.App.3d at p. 293; see *People v. Hunt* (1977) 19 Cal.3d 888, 897, fn. 10; *People v. Orin* (1975) 13 Cal.3d 937, 945, fn. 10; *People v. Curtiss* (1970) 4 Cal.App.3d 123, 127 [all pointing out that unappealed defective order is binding, or principle of invited error can apply on an appeal from it]; cf. *Brazell v. Superior Court* (1986) 187 Cal.App.3d 795, 800 [defects in binding second order of

11

dismissal do not render it invalid for purposes of two-dismissal rule].)  It is thus the order of dismissal that is effective, not the orders attempting to backwheel from it.

Given our need to order dismissal of the conservatorship for insufficient evidence of the element of a pending indictment, the issue of the imposed contractual disability is moot.  The cross-appeal regarding the length of the conservatorship is moot as well.

## DISPOSITION

The order imposing the conservatorship is reversed with directions to dismiss the petition for insufficient evidence of an element of the conservatorship.  The cross-appeal is dismissed as moot.  The stay previously issued in this matter, having served its purpose, is dissolved upon the issuance of our remittitur.


                                         BUTZ           , J.


We concur:


      RAYE           , P. J.


      RENNER        , J.

BUTZ, J., Concurring.

　　With apologies to Dolly Parton, here I go again, concurring with myself. (See *People v. Elder* (2014) 227 Cal.App.4th 1308, 1318 (conc. & dis. opn. of Butz, J.).) My fellow justices quite rightly agree that the criminal court attempted to correct judicial error in a ruling that was final and, therefore, under *Smith v. Superior Court* (1981) 115 Cal.App.3d 285 (*Smith*), its subsequent orders were void (and, as a result, subject to collateral attack in the present proceedings). Although unable to convince my colleagues to head down this path, I concur separately to advocate that there is other precedent suggesting *Smith's broad* holding—that a dismissal order is a final ruling *never* subject to modification—is not necessarily correct.

　　*Jackson v. Superior Court* (2010) 189 Cal.App.4th 1051 (*Jackson*) added a nuance to the distinction between interim and "final" orders. It concluded a trial court retains the jurisdiction to reconsider an order granting a petition for habeas corpus before the taking of an appeal, because the order was not "binding" until the period to appeal expired. (*Id.* at pp. 1067-1068.) Among the authority on which it relied was *People v. Wadkins* (1965) 63 Cal.2d 110, 113, which held that a trial court has jurisdiction to vacate a final judgment (or alternately grant a petition for a writ of *coram nobis*) before the time to appeal expired in order to allow a defendant to withdraw a plea. (Accord, *People v. McGill* (1970) 6 Cal.App.3d 953, 955 [trial court had jurisdiction to set aside final order granting probation before the time to take an appeal expired to entertain a new trial motion, citing *Wadkins*]).[1]

---

[1] Just to make things interesting, *Jackson* does not cite either *In re Candelario* (1970) 3 Cal.3d 702, 704-707, where the court had entered the amended judgment *before* that defendant's unsuccessful appeal, or *Smith, supra,* 115 Cal.App.3d at page 287 (maj. opn. of White, P. J.), where the court vacated its order of dismissal *before* the taking of any appeal and, conversely, neither *Candelario* nor *Smith* took the period to appeal into account in the determination of finality, or the holdings in *Wadkins* or *McGill*.

1

*People v. Krivda* (1971) 5 Cal.3d 357, 362-363 and footnote 2 (maj. opn. of Wright, C. J.) (which described the question of the extent of the trial court's inherent power to reconsider as unsettled, but declined to provide any answer) also suggested that the point at which a final order becomes *binding* is relevant to the analysis of when reconsideration is permissible. It held that a ruling on a motion to suppress is final for purposes of review within 30 days as a matter of statute and therefore cannot be reconsidered *after* that time, suggesting the converse (in accord with the later holding in *Jackson*, which does not cite it): that reconsideration of even a final determination that is not yet binding is proper.[2]

Entwined in the concept of the binding status of a final ruling are considerations of jeopardy. Obviously, there cannot be anything more final than a postjeopardy rendition of judgment that amounts to an acquittal of an enhancement, as in *Candelario*, *supra*, 3 Cal.3d 702, which is not subject to review, and this must inform that decision in some sense. (*Smith*, *supra*, 115 Cal.App.3d at p. 293 ["The tenor of the *Candelario* decision suggests that when the discretionary judicial act has been performed in the defendant's favor, the judgment or order is immune from . . . trial court attack."].) This might explain why the then recent holdings in *Wadkins* (which *vacated* a criminal judgment to allow withdrawal of a plea) or *McGill* (which *set aside* a final order of probation to allow a defendant to file a motion for new trial) did not figure at all in *Candelario*'s analysis, because they did not involve reviving a terminated prosecution against a defendant postjeopardy. Had the *Candelario* opinion expressly made this point, it might have better informed the analysis in this area of law.

---

[2]  A court has jurisdiction to reconsider a suppression ruling during that 30-day period *only* to correct its own error sua sponte in applying the law, and under several other narrow circumstances in the interests of justice. (*People v. Ramirez* (1992) 6 Cal.App.4th 1583, 1589, fn. 4, 1592-1593.)

Viewing the above authority and the authorities cited in the majority opinion (which do not, for the most part, take each other into account) in light of this possible "binding ruling" qualification (subject to considerations of jeopardy), the reinstatement of charges or a recidivist finding in *People v. Nesbitt* (2010) 191 Cal.App.4th 227 (*Nesbitt*) and *People v. Castello* (1998) 65 Cal.App.4th 1242 (*Castello*) postjeopardy is permissible because these rulings were *preliminary* to the rendition of any judgment of acquittal (even if refiling of charges were not possible) and thus not final rulings terminating the trial court's jurisdiction to prosecute the defendants further (and *In re Anthony H.* (1982) 138 Cal.App.3d 159 being an even more preliminary ruling because the oral order had not yet been officially recorded). *Wadkins*, *McGill*, and *Jackson* properly focused on whether the rulings were final with respect to the time to appeal, because in each instance the postjeopardy reconsiderations did not seek to *reinstate* jurisdiction over prosecutions of those defendants that had terminated, nor does reconsideration of *collateral* relief in *Jackson*.

With this understanding, it can be seen that *Smith's* holding—which did not take the concept of a *binding* final order into account—should not prescribe the result in every instance. An order of dismissal is *not* necessarily like the rendition of the *postjeopardy* judgment of acquittal in *Candelario*, which was binding, and thus I think it is too broad a statement to consider *all* orders of dismissal to be "final" as of their rendition merely because this is a termination of the *action* against a defendant. (E.g., *Nesbitt*, *supra*, 191 Cal.App.4th at p. 238 & fn. 10; *Smith*, *supra*, 115 Cal.App.3d at p. 289.) If it is a first order of dismissal of felony charges prejeopardy, there is still the *power* to prosecute the defendant, and thus a trial court's jurisdiction to reinstate the charges against a

defendant through reconsideration of its order should not terminate until the taking of an appeal[3] or the order becoming binding upon the expiration of the time to do so.

*People DeLouize* (2004) 32 Cal.4th 1223, 1232-1233 indicates that the doctrine of "finality" is not an absolute, but reflects the expression of a collection of principles. A first felony dismissal does not have a terminating effect on the ability to reprosecute a defendant,[4] and a timely correction in the trial court of an erroneous dismissal thus does not represent relitigation of settled issues—rather, it forestalls unnecessary expenditure of judicial resources in going through the additional process of refiling new charges. (In contrast, the result in *Marler v. Municipal Court* (1980) 110 Cal.App.3d 155 involved the dismissal of a *misdemeanor*, which terminated the ability to prosecute those defendants further and thus the order of dismissal would be binding on issuance.) Although I would not imagine the present situation to represent a recurring problem, it offends my notions of judicial efficiency to accord the status of "magic words" to a trial court's oral pronouncement, which then cannot be taken back after being recorded in the minutes. (Cf. *Castello*, *supra*, 65 Cal.App.4th at p. 1249 ["A court could not operate successfully under the requirement of infallibility in its interim rulings."].) The result in the present case is not an outcome that any of the parties desired for the deeply disturbed subject of the proceedings (though the attorneys for Christopher B. were obligated to pursue it).

This is not the tidiest collection of holdings to apply in the present case. Having sewn this precedent together into one piece, perhaps this concurring opinion can inspire

---

[3] The People may appeal an order of dismissal that does not implicate double jeopardy. (*People v. Eroshevich* (2014) 60 Cal.4th 583, 589, fn. 3; Pen. Code, § 1238, subd. (a)(8).) However, as I noted in the majority opinion (at p. 11, *ante*), a defective order of dismissal pursuant to Penal Code section 1385 is not void, and a failure to make a contemporaneous challenge forfeits the right to raise defects in the order on appeal.

[4] Again, I note that the parties have not explored whether reindictment of Christopher B. was an option in the criminal case after the court's ruling. (Maj. opn., *ante*, at p. 10.)

the Supreme Court to take the opportunity to tailor it more seamlessly on the question of whether a final ruling also being "binding" plays any role in the holding of *Smith*.

_____BUTZ_____, J.
