Filed 12/23/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| ALICIA VALLEJO,<br><br>      Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF SANTA CLARA COUNTY,<br><br>      Respondent;<br><br>PEOPLE OF THE STATE OF CALIFORNIA,<br><br>      Real Party in Interest. | H048233<br>(Santa Clara County<br>Super. Ct. No. C1897470) |

During pretrial proceedings in a multi-defendant murder prosecution, Judge Paul O. Colin dismissed the single accessory-after-the-fact charge against petitioner in the interest of justice under Penal Code section 1385. The dismissal occurred on February 20, 2020. Judge Colin later recused himself at the request of the prosecution, and the case was assigned to Judge Linda R. Clark. Judge Clark found Judge Colin's recusal to have been a concession to retroactive disqualification, and on June 22, 2020, she granted the prosecution's motion to set aside as void all rulings of Judge Colin dating back to January 9, including the February 20 dismissal, thereby reinstating the accessory count against petitioner.

Petitioner seeks a writ of mandate from this court to vacate Judge Clark's June 22 order setting aside Judge Colin's February 20 order dismissing her case. Petitioner argues Judge Clark lacked authority to set aside the dismissal; Judge Colin had not

conceded grounds for retroactive disqualification; nor had the prosecution established those grounds.

We begin by emphasizing the order we are called upon to review, namely Judge Clark's June 22 order. We recognize that the June 22 order is necessarily intertwined with the underlying February 20 order which is alleged to have been the product of bias on the part of Judge Colin. But ultimately, whether the February 20 dismissal was an appropriate exercise of discretion under Penal Code section 1385 is not before us, as the time to vest this court with jurisdiction to make that determination passed without a notice of appeal being filed. As in every case, the scope of our review is dictated by unforgiving jurisdictional confines and the parties' own procedural decisions.

As we will explain, Judge Colin's February 20 order dismissing the charge against petitioner was a final order terminating the trial court's authority over her case. To the extent the trial court has inherent equitable authority to reconsider a discretionary dismissal in a criminal case, that authority does not extend to the circumstances here. The People had a clear remedy to address the trial court's alleged bias or appearance of bias underlying the dismissal—an appeal under Penal Code section 1238, subdivision (a)(8). The People elected not to appeal, and have therefore forfeited their right to challenge the dismissal. We conclude that Judge Clark was without jurisdiction to set aside the dismissal, and further that Judge Clark's order was based on a flawed interpretation of Code of Civil Procedure section 170.3, subdivision (c). We will therefore direct the trial court to vacate its orders staying and later setting aside the February 20 order.

## I. BACKGROUND

Cesar P. was shot and killed in December 2016. A year later, murder charges were filed against Angel Santacruz, Guillermo Cervantes, Jose Alcantar, and Joseph Duran. Petitioner Alicia Vallejo (Duran's mother) was charged as an accessory after the fact to murder. The charges were dismissed and refiled in 2018 against all codefendants

2

except Santacruz, who became the People's witness and singled out codefendant Cervantes as the shooter. An amended information charged Cervantes, Alcantar, and Duran with conspiracy to commit murder (Pen. Code, §§ 182, subd. (a)(1), 187; count 1), murder (*id*., § 187; count 2), and active participation in a criminal street gang (*id*., § 186.22, subd. (a); count 3). Petitioner was charged as an accessory after the fact to murder. (*Id*., § 32; count 4.)[1]

We describe the chronology of proceedings in some detail because it is germane to our analysis. The case was assigned for trial to Judge Colin. Pre-trial motions began on December 17, 2019, with Santacruz's credibility featuring prominently. The hearings were unwieldly at times, and the court expressed frustration toward all parties. Judge Colin threatened the prosecutor with contempt on January 29, 2020 when the prosecutor took exception to a ruling regarding certain character evidence. On February 3, Judge Colin severed codefendant Alcantar's case as a lesser sanction to dismissal, after learning that the jail had been recording calls between Alcantar and his attorney. Judge Colin faulted the district attorney's office for not alerting the sheriff's office regarding the illegal recordings or attempting immediately to retrieve the recordings from the discovery material.

On February 18, Judge Colin expressed displeasure about the prosecutor speaking during a break with a testifying witness accompanied by a retired detective who had worked on the case and had been designated the prosecution's investigating officer for trial. Judge Colin ordered the prosecutor not to discuss anything of substance with a testifying witness, and ordered the investigating officer excluded from the courtroom during witness testimony. The judge later apologized and rescinded the investigator's exclusion after reviewing caselaw on the subject provided by defense counsel.

---

[1] We grant petitioner's request for judicial notice of the records and filings in the underlying case No. C1897470. (Evid. Code, §§ 452, subd. (d), 459.)

On February 19, Judge Colin addressed a defense motion to dismiss for destroying exculpatory evidence.  He denied the motion, but ruled that officers had acted in bad faith by not downloading the contents of a cell phone consensually collected from a person of interest, because the phone might have contained evidence impeaching Santacruz and thereby exonerating Cervantes.  Judge Colin indicated that a remedy short of dismissal would be appropriate and took the matter under submission.

On February 20, 2020, Judge Colin dismissed the single accessory charge against petitioner pursuant to Penal Code section 1385, and exonerated her bail.  Petitioner had moved to dismiss the sole count against her based on discriminatory prosecution, and alternatively asked the court to dismiss the charge on its own motion under Penal Code section 1385.  According to the People, petitioner understood that both Duran and Santacruz were involved in the murder; she aided Duran the day after the murder by driving him to the bus station in Oakland, buying him a bus ticket to Mexico, and giving him her cell phone; and she lied to law enforcement in August 2017 to protect Duran.  The People argued the case involved multiple investigations generating thousands of pages of discovery; the charge was supported by evidence; and it should not be dismissed at the pretrial stage.  Petitioner argued she was the only person charged as an accessory after the fact even though others had assisted the codefendants; she was the mother of two small children; she cared for her mother and uncle; she helped support her father who recently had a stroke; she lost her job as a nurse when she was arrested in December 2017; she had been unable to secure comparable work during the two years the case had been pending; she paid over $8,000 to secure bail; and she had no criminal history.  Judge Colin ruled that the nature and circumstances of the offense, as well as petitioner's lack of criminal history, her background, character, and prospects favored a dismissal in furtherance of justice.  Judge Colin denied the prosecutor's request to stay trial proceedings to allow the People time to seek an emergency stay in this court, and the People did not ask us to stay the proceedings.

4

On February 27, the People moved for Judge Colin to "disqualify himself from presiding over further proceedings" in the case on interrelated grounds: "Bias or prejudice toward a lawyer in the proceeding" (Code Civ. Proc., § 170.1, subd. (a)(6)(B)) and "[a] person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial." (*Id.*, subd. (a)(6)(A)(iii).) The People argued that "evidence of bias against the People and lack of impartiality has come to light based on cumulative conduct of the court … cumulating with statements and acts by the judge on February 20, 2020." The motion asked that Judge Colin recuse himself or, if he would not recuse himself, that the matter be set for a disqualification hearing. The motion cited examples of purported bias against the prosecution between January 9 and February 20, supported by sworn declarations and reporter's transcripts, such as making demeaning and sarcastic comments, failing to read the prosecution's briefs, not allowing prosecutors to be heard, ordering a prosecutor to leave the courtroom and not return, and forming judgments and making findings before hearing the prosecution's arguments. The motion was filed and served on Judge Colin in open court, and served on petitioner's attorney by email. Judge Colin stated that he needed time to review the motion, counted out 10 days as falling on Sunday March 8, and ordered the parties to return the following week on March 6. Judge Colin commented that the motion appeared timely. He noted that the motion included a number of assertions including "a controversial decision" from the previous week, that he had been out sick for two days, and that while it was "technically true that [he] could have been served yesterday," there was no timeliness concern in his view.

On March 6, Judge Colin recused himself by written order identifying the People's claims, denying actual bias, but acknowledging under Code of Civil Procedure section 170.1, subdivision (a)(6)(A)(iii) the "appearance of bias that might result from [his] continuing to preside over the instant matter." The case was transferred to the supervising judge of the criminal division "for reassignment and further proceedings."

Judge Colin announced his ruling in open court, in the presence of the prosecutor. (Petitioner was not present, having been dismissed from the case.) The supervising judge reassigned the case on March 9, and the case was again reassigned on April 9 to Judge Clark after a codefendant made a peremptory challenge to the initial reassignment.

On March 12, the People moved under Code of Civil Procedure section 170.3, subdivision (b)(4) to set aside all rulings of Judge Colin as of January 9, 2020 due to his recusal, and served petitioner's attorney with the motion. In addition to the order dismissing the accessory charge against petitioner, the motion encompassed the order severing Alcantar's case as well as several in limine rulings. The People argued that Judge Colin's acknowledgment of the appearance of bias moving forward was a concession of the appearance of bias in the past, which in turn constituted good cause to vacate all of his January 9 and later rulings as void. The People also argued they had established actual bias as shown by the disqualification motion.

On April 9, Judge Clark emailed counsel for all parties and petitioner requesting a meeting to discuss logistics. The prosecutor alerted Judge Clark to the pending motion to set aside Judge Colin's rulings. The prosecutor explained that the People had not filed a notice of appeal from the February 20 dismissal "because there's an argument that jurisdiction would leave the Superior Court … at that point." He asked that the motion be heard and decided before April 20, the last day to appeal the dismissal order, to avoid having to litigate whether the court's consideration of the motion—"which implicates the 1385 decision"—makes that decision "not final." (The prosecutor also acknowledged the court's scheduling challenges in light of the global pandemic.) Petitioner joined a teleconference with the parties and Judge Clark on April 15, and on April 16 Judge Clark issued an order staying Judge Colin's dismissal until the motion to set aside could be fully briefed and argued. Petitioner objected to the stay on jurisdictional grounds.

The People filed a further motion to set aside Judge Colin's rulings in light of Judge Clark's stated preliminary view that Judge Colin, by not filing a verified answer

6

under Code of Civil Procedure section 170.3, subdivision (c)(3), was deemed to have consented to disqualification and to have conceded the allegations raised in the disqualification motion, rendering him disqualified as of January 9, the date of the earliest conduct alleged in the People's motion. The People agreed with Judge Clark's indicated position as an alternative to the original basis for relief.

Petitioner opposed the motion as to Judge Colin's February 20 dismissal, and joined in the defendants' opposition. Petitioner argued the court lacked jurisdiction to vacate the dismissal; the People had not sought or obtained an order disqualifying Judge Colin as of January 9; and the dismissal order was not otherwise void under *Urias v. Harris Farms* (1991) 234 Cal.App.3d 415 because the People had failed to timely raise disqualification or allege facts clearly showing Judge Colin was disqualified to hear the case.

On June 22, Judge Clark set aside as void all orders issued by Judge Colin on and after January 9, including the February 20 order dismissing the sole count against petitioner. Ruling from the bench, Judge Clark noted that under Code of Civil Procedure section 170.3, subdivision (b)(4), "absent good cause, the judge who replaces a disqualified judge shall not set aside the rulings of the previous judge that were made prior to the disqualification," which rule makes it "incumbent on this Court to determine precisely when the disqualification existed." Judge Clark found the People's motion to disqualify timely and legally sufficient (as had Judge Colin by not striking the filing). Judge Clark found that Judge Colin's recusal order was insufficient to deny bias under the statutory disqualification scheme because it was "neither verified nor executed under penalty of perjury." In Judge Clark's view, by denying bias Judge Colin sought to contest disqualification and was therefore required to file an answer admitting or denying the allegations, and because he failed to do so, he was deemed to have consented to the disqualification and to have conceded the allegations of bias which dated back to January 9. Judge Clark concluded the allegations were deemed true for purposes of

7

determining when grounds for disqualification existed.  Petitioner signed an agreement to appear, and Judge Clark issued a written order releasing her on her own recognizance.

Petitioner seeks a writ of mandate to vacate Judge Clark's orders staying and setting aside Judge Colin's dismissal.[2]  We have stayed her prosecution in the trial court, and issued an order to show cause.

## II.  DISCUSSION

### A. THE TRIAL COURT LACKED AUTHORITY TO VOID THE FEBRUARY 20 DISMISSAL ORDER

Petitioner asserts Judge Clark lacked authority to stay and later set aside Judge Colin's dismissal because the trial court lost subject matter jurisdiction over petitioner's case when the sole charge against her was dismissed.  "In its fundamental sense, 'jurisdiction' refers to a court's power over persons and subject matter." (*People v. Mower* (2002) 28 Cal.4th 457, 474, fn. 6.)  "A lack of jurisdiction in its fundamental or strict sense results in ' "an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties." ' " (*People v. Lara* (2010) 48 Cal.4th 216, 224.)  Thus, the legal question subject to our independent review is whether the superior court lost its authority over the action against petitioner when it dismissed the case against her.

#### 1.  Petitioner's Authorities

Petitioner relies on *Smith v. Superior Court* (1981) 115 Cal.App.3d 285 (*Smith*), *Conservatorship of Christopher B*. (2015) 240 Cal.App.4th 809 (*Christopher B.*), and *People v. Hampton* (2019) 41 Cal.App.5th 840 (*Hampton*).  We examine each in turn.

---

[2] Codefendant Alcantar also sought review of Judge Clark's June 22 order voiding Judge Colin's order severing Alcantar's case for trial.  His writ petition was denied because Duran resolved his charges by plea and the remaining codefendants were tried while Alcantar's petition was under review, effectively rendering his case severed and his petition moot.

*Smith v. Superior Court*

*Smith* addressed whether a trial court has authority to reconsider and vacate an order dismissing a prosecution based on the allegation that a mistake had occurred and that new facts would alter the court's decision. (*Smith*, *supra*, 115 Cal.App.3d at p. 287.) The trial court in *Smith* granted the prosecutor's motion to dismiss criminal charges after the court of appeal held certain evidence inadmissible based on an illegal warrantless search. (*Id*. at pp. 287–288.) The prosecutor was aware that the California Supreme Court had denied review and a remittitur had issued in the case, and the defendant's attorney stated his understanding that no appellate matters were pending. (*Ibid*.) Upon learning that the Attorney General's office had filed an application for stay in the United States Supreme Court pending the filing of a petition for writ of certiorari, the prosecutor moved successfully to vacate the dismissal and reinstate the charges. (*Id*. at p. 288.)

The court in *Smith* rejected the argument that in vacating the dismissal the trial court acted under Code of Civil Procedure sections 473 (relief from judgment taken by mistake, inadvertence, surprise, or excusable neglect), 1008 (reconsideration of order), and 128 (providing every court with certain powers, including power "[t]o amend and control its … orders so as to make them conform to law and justice"). (*Smith*, *supra*, 115 Cal.App.3d at p. 291.) Those statutes did not apply to criminal proceedings because the California Supreme Court in *Gonzales v. Superior Court* (1935) 3 Cal.2d 260 held that section 473 does not apply to criminal actions, and the *Gonzales* reasoning—that only those parts of the Code of Civil Procedure expressly made applicable to criminal actions are incorporated into the Penal Code—precluded application of sections 1008 and 128. (*Smith*, at p. 291.) The *Smith* court also rejected the argument that the trial court had equitable power to vacate the dismissal order, observing, "Even granting that criminal courts have inherent powers which they may exercise in various contexts, a large step must be taken before concluding that a criminal judgment or order dismissing a

9

criminal prosecution can be disturbed because of a mistake in the presentation of operative facts." (*Id*. at pp. 292–293.)

The *Smith* court found *In re Candelario* (1970) 3 Cal.3d 702 (*Candelario*) instructive. (*Smith*, *supra*, 115 Cal.App.3d at pp. 291–292.) The petitioner in *Candelario* was convicted of a drug offense and admitted a prior felony conviction. (*Candelario*, at p. 704.) The trial court sentenced him without making a finding on the prior conviction, and several weeks later filed an amended abstract of judgment reflecting a finding on the prior. (*Id*. at pp. 704, 707.) On habeas review, the California Supreme Court rejected the Attorney General's contention that the amended abstract served as a clerical correction. Concluding that the amendment was in excess of the trial court's jurisdiction and ineffective for any purpose, the *Candelario* court noted, "[a]n amendment that substantially modifies the original judgment or materially alters the rights of the parties[] may not be made by the court under its authority to correct clerical error[s], [] unless the record clearly demonstrated that the error was not the result of the exercise of judicial discretion." (*Id*. at pp. 705, 708.) The *Smith* court reasoned that the tenor of the *Candelario* decision suggests a final judgment or dispositive order performed in a criminal defendant's favor is immune from trial court attack. (*Smith*, at pp. 292–293.) The court held "that at least where no actual fraud has been perpetrated upon the court, a criminal court had no authority to vacate a dismissal entered deliberately but upon an erroneous factual basis." (*Id*. at p. 287.) (We note the contrast to acts in excess of the court's jurisdiction such as the imposition of an unlawful sentence, where "[s]ettled authority permits a prosecution attack upon such a sentence." (*Id*. at p. 293, fn. 4, citing *Wilson v. Superior Court* (1980) 108 Cal.App.3d 816.))

### *Conservatorship of Christopher B*.

In *Christopher B*., the appellate court addressed the trial court's authority to reinstate an indictment dismissed by mistake, in the context of reviewing a probate court order establishing a conservatorship over an incompetent criminal defendant.

10

(*Christopher B.*, *supra*, 240 Cal.App.4th at pp. 816–818.) A pending indictment or information against the incompetent defendant was required to establish the conservatorship. (Welf. & Inst. Code, former § 5008, subd. (h)(1)(B)(ii).) At a status conference and in light of the conservatorship proceedings, the criminal court dismissed the "charges" in a "case" against the incompetent defendant, which included a stayed complaint and later-filed indictment under the same case number, on the oral motion of the prosecutor who was unaware of the indictment. (*Christopher B.,* at pp. 813–814.) Alerted to the mistake, a week later the criminal court issued an order stating that "the 'Complaint … is dismissed. The Indictment is not dismissed.' " (*Id.* at p. 814)

On appeal from the conservatorship order, the *Christopher B.* court addressed the reach of the criminal court's dismissal. Citing *In re Candelario*, it held that the trial court lacked jurisdiction to correct its error because the error was "in *rendering* a deliberate 'exercise of judicial discretion.' " (*Christopher B.*, *supra*, 240 Cal.App.4th at p. 816.) It did not matter that "a court or moving party acted under a mistake as long as the court 'was performing the act it intended to perform.' " (*Ibid.*) The trial court's second order was therefore void and subject to collateral challenge in the conservatorship proceeding. (*Id.* at p. 817.)

### *People v. Hampton*

Most recently, the court in *Hampton* addressed the trial court's authority to vacate a criminal dismissal as part of a global plea agreement encompassing the dismissed case and probation violations. (*Hampton*, *supra*, 41 Cal.App.5th at p. 843.) The trial court accepted the plea agreement, vacated the dismissal, and rejected a later motion by the defendant to withdraw the plea based on lack of authority to reinstate the criminal case. (*Id.* at pp. 844–845.) The defendant appealed from a prison commitment after violating probation, arguing that the judgment and sentence were void because the trial court had lost subject matter jurisdiction when it originally dismissed the case and thus had no authority to vacate that dismissal. (*Id.* at p. 845.)

11

The appellate court found "no constitutional or statutory provision that authorizes the parties in a criminal action to stipulate to the trial court vacating its earlier dismissal of the entire action to restore jurisdiction to implement a plea bargain." (*Hampton*, *supra*, 41 Cal.App.5th at p. 846.) Citing *Christopher B*. and *Smith*, the *Hampton* court observed that "a dismissal of an entire criminal action is a final order that leaves a court without jurisdiction to reinstate the case." (*Ibid.*) But it also recognized that under "broad inherent powers" to carry out judicial duties, "a court may be authorized to vacate a final judgment of dismissal that was procured by extrinsic fraud." (*Hampton*, at p. 847, citing *Marler v. Municipal Court* (1980) 110 Cal.App.3d 155, 162.) In *Marler*, the appellate court instructed the superior court to issue a writ of prohibition directing the municipal court to dismiss reinstated misdemeanor charges that had been previously dismissed under Penal Code section 1385. (*Marler*, at pp. 159, 163.) The *Marler* court noted that a final judgment of dismissal "may be subject to the inherent power of the court to vacate where procured by fraud," but found no fraud had been shown in that case. (*Id.* at p. 162.)

In reversing the judgment, the court in *Hampton* explained: "[T]he dismissal at the time operated as a final judgment. The prosecution intended it to be a dismissal, as it announced it would file a new complaint. The trial court acted upon it as a dismissal with jurisdictional effect, as it released defendant from custody for purposes of the case. Everyone left the courtroom that day fully understanding the case had been dismissed and the court had lost subject matter jurisdiction over it. No California authority authorizes the parties in such a situation to reconfirm jurisdiction on a trial court by stipulation to implement a plea bargain." (*Hampton*, *supra*, 41 Cal.App.5th at p. 848.) The *Hampton* court distinguished *People v. Nesbitt* (2010) 191 Cal.App.4th 227, which involved the trial court's inherent authority to reconsider an interim, mid-trial order dismissing two counts of a six-count complaint on statute of limitations grounds. (*Hampton*, at p. 848.) The *Nesbitt* dismissals were not based on insufficient evidence, no final judgment had

12

been entered from which an appeal could have been taken, and presumably the prosecution could have refiled the dismissed counts. (*Nesbitt*, at p. 238.)

### 2. The People's Authorities

The People argue petitioner's authorities do not address the trial court's authority to vacate an order issued by a *disqualified* judge. Relying primarily on *Jackson v. Superior Court* (2010) 189 Cal.App.4th 1051 (*Jackson*), *Christie v. City of El Centro* (2006) 135 Cal.App.4th 767 (*Christie*), *Cadenasso v. Bank of Italy* (1932) 214 Cal. 562 (*Cadenasso*), and *Urias v. Harris Farms, Inc*. (1991) 234 Cal.App.3d 415 (*Urias*), the People contend that the trial court retained jurisdiction over Judge Colin's dismissal until the time to file an appeal from that order had passed. Here again, we examine the posture of each case in some detail.

#### *Jackson v. Superior Court*

In *Jackson* a different panel of this court recognized the trial court's inherent power to reconsider and vacate an order granting a petition for a writ of habeas corpus. (*Jackson*, *supra*, 189 Cal.App.4th at pp. 1056–1057.) The panel rejected the argument that the grant of habeas corpus constituted a final judgment divesting the trial court of jurisdiction to hear a motion for reconsideration before the 60-day time to appeal had passed. (*Id*. at p. 1062.) The court concluded that a trial court retains the inherent jurisdiction to reconsider an order granting habeas relief before the taking of an appeal because the order is not "binding" until the time for appeal has passed. (*Id*. at p. 1064.) A trial court would, however, lose jurisdiction to reconsider its ruling when the order became final *and* binding, or when a notice of appeal was filed. (*Id*. at pp. 1067–1068.)

The court in *Jackson* viewed the motion to reconsider as tantamount to a nonstatutory motion to vacate the judgment. (*Jackson*, *supra*, 189 Cal.App.4th at p. 1067.) The court cited to *People v. Castello* (1998) 65 Cal.App.4th 1242 (*Castello*) for the inherent power to reconsider rulings (in that case an interim ruling on the validity of a prior strike). (*Jackson*, at p. 1067.) *Castello* in turn quoted from *In re Jessup* (1889)

13

81 Cal. 408 and *Metropolitan Water Dist. v. Adams* (1942) 19 Cal.2d 463 that " '[T]he power to grant rehearings is inherent,–is an essential ingredient of jurisdiction, and ends only with the loss of jurisdiction.' " (*Castello*, at p. 1248.)  The Supreme Court in those cases was addressing its own power to grant rehearing, which terminated upon remittitur. (*In re Jessup*, at p. 468; *Metropolitan Water Dist*., at p. 469.)

The *Jackson* court cited *People v. Wadkins* (1965) 63 Cal.2d 110 as an example of trial court postjudgment jurisdiction in a criminal proceeding.  (*Jackson*, *supra*, 189 Cal.App.4th at p. 1066.)  The defendant in *Wadkins* sought a writ of coram nobis to allow him to withdraw his guilty plea and vacate his conviction based on the denial of an unkept promise.  (*Wadkins*, at p. 111.)  The appellate court recognized that "although a motion to change a plea of guilty must ordinarily be made before judgment is pronounced (Pen. Code, § 1018), both motions to vacate the judgment and petitions in the nature of *coram nobis* may be addressed to the trial court after judgment, if there has been no affirmance on appeal (Pen. Code, § 1265)."  (*Id*. at pp. 112–113.)  The relief is grounded in a criminal defendant's right to due process.  (*Id*. at p. 114.)

*Christie v. City of El Centro*

While his motion for a new trial was pending following a nonsuit and dismissal, the plaintiff in *Christie* challenged the trial judge for cause.  (*Christie*, *supra*, 135 Cal.App.4th at p. 773.)  The plaintiff asserted that the judge was disqualified at the time of nonsuit based on the judge's conversations about the case (specifically about possible nonsuit) with a judge who had previously been disqualified from the case. (*Ibid*.)  An independent judge determined the trial judge was disqualified based on those communications, and a replacement judge granted the plaintiff's new trial motion based on irregularity in the proceedings.  (*Id*. at pp. 774–775.)  The city appealed the order granting a new trial; it did not petition for a writ of mandate to challenge the disqualification.  (*Id*. at p. 775.)

14

In upholding the order granting a new trial, the court in *Christie* concluded that because the trial judge was disqualified at the time he granted the nonsuit, that ruling "was null and void and must be vacated regardless of a showing of prejudice." (*Christie*, *supra*, 135 Cal.App.4th at p. 776.)  In adhering to the view that the judgment was void (rather than voidable), the *Christie* court described voidable orders as "meaning they only must be vacated if the issue is properly raised by a party in the trial court, because the superior court itself, if not the disqualified judge, retains fundamental subject matter jurisdiction." (*Id*. at p. 779; see also *People v. Lara*, *supra*, 48 Cal.4th at p. 225 [a voidable judgment is an act in excess of jurisdiction, and as such, it "is valid until set aside, and parties may be precluded from setting it aside by such things as waiver, estoppel, or the passage of time"].)  *Christie* also noted Witkin's view that a disqualified judge's lack of authority to hear and determine a cause " 'should not be considered a lack of jurisdiction of the subject matter,' " as " '[a]nother judge of the same court, or a judge assigned from another court, may try the case.' "  (*Christie*, at p. 780, citing 2 Witkin, Cal. Procedure (4th ed. 1996) Courts, § 93, p. 131; accord, *Rossco Holdings Inc. v. Bank of America* (2007) 149 Cal.App.4th 1353, 1359–1363 [trial court retains subject matter jurisdiction over pending matter post disqualification].)

### *Cadenasso v. Bank of Italy*

In *Cadenasso*, the Supreme Court addressed an aggrieved party's effort to vacate a civil judgment based on the trial judge's disqualification (as a shareholder in the bank which had prevailed in the trial court and on appeal), where the aggrieved party became aware of the grounds for disqualification on the same day the Supreme Court affirmed the judgment.  (*Cadenasso*, *supra*, 214 Cal. at p. 564.)  In the aggrieved party's appeal from an order sustaining a demurrer to an action to vacate the judgment, the Supreme Court noted that the aggrieved party had acted with due diligence in seeking to have the judgment vacated based on the trial judge's disqualification.  (*Id*. at p. 567.)  The Supreme Court characterized the judgment as void, the judge as acting without

15

jurisdiction, and the judge's act a nullity. (*Id*. at pp. 567–568.) The court also noted that the action seeking to vacate the judgment was brought in equity and commenced before the challenged judgment had become final. (*Id*. at p. 569; *Bank of Italy v. E.N. Cadenasso* (1929) 206 Cal. 436, 438 ["Courts of equity offer plain, speedy and adequate relief against the evil effects that may flow from void judgments"]; see also *Olivera v. Grace* (1942) 19 Cal.2d 570, 575 ["Typical of the situations in which equity has interfered with final judgments are the cases where the lack of a fair adversary hearing in the original action is attributable to matters outside the issues adjudicated therein which prevented one party from presenting his case to the court, as for example, where there is extrinsic fraud"].)

### *Urias v. Harris Farms*

Upon learning that the judge who granted a defense motion for summary judgment had a disqualifying conflict of interest, the plaintiff in *Urias* filed a statement of disqualification requesting that the judge be disqualified and the summary judgment ruling be voided. (*Urias, supra,* 234 Cal.App.3d 415 at p. 419.) The challenged judge did not respond to the disqualification statement, and a superior court judge appointed by the Judicial Council rejected the argument that the statement was untimely and determined the challenged judge was disqualified by operation of Code of Civil Procedure section 170.3, subdivision (c)(4) ("A judge who fails to file a consent or answer … shall be deemed to have consented to his or her disqualification"). (*Urias*, at p. 419.) The appointed judge did not address the plaintiff's request to void the adverse judgment. The plaintiff appealed from that judgment, while the defendant separately petitioned for a writ of mandate directing that the disqualification order be vacated. (*Id*. at p. 420.)

Denying the writ petition, the court in *Urias* concluded that the disqualification statement had been properly filed, and because the challenged judge neither struck the statement nor filed an answer contesting the disqualification, he was properly deemed to

16

have consented to the disqualification regardless of the sufficiency of the statement. (*Urias*, *supra*, 234 Cal.App.3d at pp. 421–422.)

In determining whether the judgment on appeal required reversal in light of the disqualification, the *Urias* court explained that Code of Civil Procedure section 170.3, subdivision (b)(4) (authorizing a replacement judge for good cause to set aside rulings of a disqualified judge made "before the judge has completed judicial action in a proceeding") did not control because the judge was deemed disqualified after he granted the motion for summary judgment and entered judgment. (*Urias*, *supra*, 234 Cal.App.3d at p. 423.) The appellate court explained that the actions of a disqualified judge are voidable if properly raised by an interested party, and a party seeking to declare a judgment void on the ground the judge was disqualified "must allege and prove facts which clearly show that such disqualification existed." (*Id*. at p. 424.) The plaintiff had "raised the judge's disqualification in a timely manner" one week after judgment was entered, along with a motion to set aside the summary judgment. (*Id*. at p. 426.) Because the challenged judge was deemed to have consented to disqualification under Code of Civil Procedure section 170.3, subdivision (c)(4), the merits of the plaintiff's disqualification statement were not addressed in the disqualification proceeding. Thus, the appellate court in *Urias* determined the sufficiency of the disqualification statement in the first instance, viewing the allegations contained in the statement as true. The plaintiff's statement (on information and belief) that the challenged judge, who was newly appointed and whose former law firm had represented the defendant " 'for the last 10 years' " was sufficient as a matter of law to establish the judge's disqualification from the inception of the case. (*Urias,* at p. 426.)

### 3. Analysis

Petitioner's authorities demonstrate that a trial court loses jurisdiction over a criminal matter when a discretionary dispositive order is issued in a defendant's favor. Judge Clark therefore lacked the authority to void or even to stay Judge Colin's

dismissal. (*Freiberg v. City of Mission Viejo* (1995) 33 Cal.App.4th 1484, 1489 ["Since the trial court had no jurisdiction to do anything after the new trial motion was deemed denied by operation of law" there were no proceedings to stay].)  A trial court's inherent equitable authority to consider a nonstatutory postjudgment motion in criminal cases has been recognized in two circumstances:  to remedy extrinsic fraud and to protect a defendant's constitutional right to due process.  Neither of those circumstances is present here.

The People's authorities do not convince us that the trial court retained jurisdiction over the accessory charge against petitioner after it was dismissed by Judge Colin in the exercise of his discretion.  *Jackson* is distinguishable in that it involves a habeas corpus proceeding which is equitable in nature and designed to overturn a presumptively valid judgment.  (*In re Barnett* (2003) 31 Cal.4th 466, 478, fn. 10; *People v. Duvall* (1995) 9 Cal.4th 464, 482 [The procedures that govern habeas corpus are intended "to provide a framework in which a court can discover the truth and do justice in timely fashion"]; *In re Harris* (1993) 5 Cal.4th 813, 851 [Justice and equity are considered when crafting a remedy to a meritorious petition].)  It makes sense for a court to exercise inherent equitable powers to reconsider an order granting habeas relief.  *Jackson* is also distinguishable in that the order there was reconsidered before the time to appeal had passed.  Even if Judge Clark had authority to issue a stay within the 60-day period for filing a notice of appeal, a stay would not have tolled the time to appeal, which ended on April 20.  "The requirements as to the time for filing notices of appeal are mandatory and jurisdictional in both civil and criminal actions."  (*People v. Lewis* (1933) 219 Cal.410, 413.)  California Rules of Court, rule 8.308(a) provides:  "Except as provided in [subpart] (b) or as otherwise provided by law, a notice of appeal … must be filed within 60 days after the rendition of the judgment or the making of the order being appealed.  Except as provided in rule 8.66, no court may extend the time to file a notice of appeal."  Neither subpart (b) (pertaining to cross-appeals) nor rule 8.66 (pertaining to emergency tolling by

18

order of the Judicial Council) applies here. The rules of court " 'have the force of statute to the extent that they are not inconsistent with legislative enactments and constitutional provisions.' " (*Sara M. v. Superior Court* (2005) 36 Cal.4th 998, 1011.)

*Cadenasso* also involved equitable relief in a civil matter. The party seeking to vacate the judgment in *Cadenasso* acted immediately upon learning of the trial judge's undisputed disqualification and while the Supreme Court retained jurisdiction over the case. In contrast here, the trial court had lost its authority over petitioner by the time the People asserted grounds for Judge Colin's disqualification on February 27. The prosecution against petitioner is not equitable in nature. Nor are the People seeking to remedy an interim order (as in *Castillo*) or a due process violation (as in *Wadkin*).

The discussion in *Christie* regarding voidable orders does not support the People's view that the trial court retained subject matter jurisdiction over petitioner's case post dismissal. Trial courts clearly have subject matter jurisdiction over nonfinal matters, as was the case in *Christie* where the trial judge's disqualification was raised and decided while a motion for new trial was under submission, and a new trial was granted based on that disqualification. Similarly, the trial court here had authority to act after Judge Colin's recusal in the ongoing criminal proceedings against defendants Cervantes, Alcantar, and Duran, but not in petitioner's case which had been dismissed and could not be refiled.

Finally, *Urias* is distinguishable in that the plaintiff in *Urias* appealed from the adverse judgment, vesting the appellate court with jurisdiction to reverse the judgment in light of the postjudgment disqualification. That jurisdiction is absent here. Because the People elected not to appeal Judge Colin's order dismissing the criminal charge against petitioner, the remedy in *Urias*—reversing the challenged judgment—is not available here. We have no jurisdiction to disturb that order; our review is limited to whether

19

Judge Clark had authority to set aside as void Judge Colin's dismissal order. We have concluded she did not.[3]

It is important to note that the loss of trial court jurisdiction under these circumstances did not leave the People without a remedy. A direct appeal was available to address the propriety of the February 20 dismissal. The record reflects that the People considered both that remedy and the possibility of seeking a writ to enjoin trial proceedings pending review. Had an appeal been filed, we would have reviewed Judge Colin's dismissal for abuse of discretion. Although reversal under that standard is rare, it is not non-existent and should not in itself be viewed as foreclosing appellate relief. As to that calculation, we acknowledge that the People's February 27 motion which laid out the case for Judge Colin's disqualification post-dated the February 20 dismissal order and therefore would not have been included in the appellate record. But the People's motion was drawn entirely from record evidence that pre-dated the February 20 order. Thus, bias influencing the February 20 order could have been demonstrated in an appeal of that order without requiring extra-record evidence. The People also could have pursued disqualification before Judge Colin heard petitioner's motion to dismiss had they believed he was unfit to render that ruling. Because the People made a strategic choice to forgo those remedies, Judge Colin's conduct is beyond the scope of our review.

Although whether the February 20 dismissal was the product of bias and therefore an abuse of discretion is not an issue we have been properly asked to decide, the record we have been presented to review compels us to observe it is replete with comments and conduct from the bench toward the prosecutor's office that do not comport with the standards of impartiality and decorum established by Canon 3(B) of the California Code

---

[3] *Urias* demonstrates that Judge Colin's dismissal order did not come within Judge Clark's authority to set aside rulings under Code of Civil Procedure section 170.3, subdivision (b)(4) (although that provision would apply to nondispositive rulings by Judge Colin). (*Urias*, *supra*, 234 Cal.App.3d at pp. 419, 423.)

of Judicial Ethics. It appears from his self-examination for possible embroilment on February 18 and ultimately his self-recusal on March 6 that Judge Colin himself may have recognized as much. We fully acknowledge the demands and stresses of presiding over a lengthy trial. But we are troubled by a record – even occurring outside the presence of a jury – containing repeated threats of direct contempt, belittling comments toward counsel, and the appearance of less than full opportunities to be heard.

### B. JUDGE CLARK MISINTERPRETED CODE OF CIVIL PROCEDURE SECTION 170.3, SUBDIVISION (C) IN RULING THAT JUDGE COLIN HAD CONCEDED ACTUAL BIAS

To provide guidance to trial courts, we address whether Judge Clark correctly applied Code of Civil Procedure section 170.3, subdivision (c) in interpreting Judge Colin's recusal order, as urged by the People. (Further statutory references are to this code.)

Under section 170.3, a judge may determine himself or herself to be disqualified. (§ 170.3, subd. (a)(1); grounds for disqualification are set forth in section 170.1.) In the event a judge who should do so refuses or fails to, any party may file in the trial court a verified statement objecting to the proceeding before that judge, and setting forth facts constituting the grounds for disqualifying the judge. (*Id*., § 170.3, subd. (c)(1).) Upon receipt of a party's objections, a challenged judge may do one of three things: request another judge agreed upon by the parties to sit in his or her place without conceding disqualification (*id*., subd. (c)(2)); consent to disqualification and so notify the presiding judge (*id*., subd. (c)(3)); or "file a written verified answer admitting or denying any or all of the allegations contained in the party's statement and setting forth additional facts material or relevant to the question of disqualification." (*Ibid*.). In the event the challenged judge "fails to file a consent or answer," he or she "shall be deemed to have consented to his or her disqualification" and a replacement will be appointed. (*Id*., subd. (c)(4).)

21

Here, the People sought Judge ColFpostin's prospective recusal on two disqualifying grounds:  section 170.1, subdivision (a)(6)(B) ("Bias or prejudice toward a lawyer in the proceeding") and subdivision (a)(6)(A)(iii) ("For any reason [¶] [a] person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial").  Judge Colin consented under subdivision (c)(3) of section 170.3 to one of those grounds by issuing an order recusing himself, and notifying the supervising judge of the criminal division of the recusal.  The order cited to section 170.1, subdivision (a)(6)(A)(iii) and acknowledged "any *appearance* of bias that *might* result from my *continuing* to preside over the instant matter."  (Emphasis added.)  Subdivision (c)(3) of section 170.3 does not require a judge who consents to disqualification to concede every alleged ground for disqualification.  Nor does the provision state that by consenting to disqualification based on cumulative conduct allegedly establishing bias or an appearance of bias, a judge concedes that each alleged act standing alone constitutes actual or perceived bias.  Judge Clark misapplied subdivision (c)(3) of section 170.3, deeming Judge Colin's recusal a "fail[ure] to file a consent or answer" under subdivision (c)(4), and finding that Judge Colin conceded actual bias as of January 9.  (Cf. *Urias*, *supra*, 234 Cal.App.3d at pp. 425–426 [disqualification allegations deemed true where challenged judge failed to file a consent or answer under subdivision (c)(3)]; *Hayward v. Superior Court* (2016) 2 Cal.App.5th 10, 36–37 [same].)  Judge Colin's consent under subdivision (c)(3) was a concession only to the prospective appearance of bias based on cumulative conduct.  Had Judge Colin been asked to recuse himself retroactively, he may have elected to file a verified answer under subdivision (c)(3) denying some or all of the allegations of actual or perceived bias.

### III.  DISPOSITION

Let a peremptory writ of mandate issue directing respondent court (1) to vacate its June 22, 2020 order setting aside the February 20, 2020 order dismissing the criminal case against petitioner, and (2) to vacate the stay issued on April 16, 2020.  (Our

22

disposition neither reaches nor requires respondent court to address any other pretrial order set aside by its order of June 22, 2020.)  Respondent court is also directed to vacate its June 22, 2020 order authorizing petitioner's release on her own recognizance, and to discharge petitioner from the stated terms of such release.

_____

Grover, J.

**WE CONCUR:**

_____

Greenwood, P. J.

_____

Danner, J.

**H048233 -** *Vallejo v. Superior Court*

| | |
|---|---|
| Trial Court: | Santa Clara County Superior Court<br>Case No.: C1897470 |
| Trial Judge: | Hon. Linda R. Clark |
| Attorneys for Defendant/Petitioner<br>Alicia Vallejo<br><br>By appointment under the Santa Clara County, Independent Defense Counsel Office | Kendall Dawson Wasley<br>Jamyrson L. Pittori |
| Attorneys for Real Party in Interest<br>The People of the State of California | Jeffrey F. Rosen<br>  District Attorney,<br>  County of Santa Clara<br>Kaci R. Lopez<br>  Supervising Deputy District Attorney<br>  County of Santa Clara |